# CHARLESTON.

BROWN, TRUSTEE, v. BROWN *et als.*

Submitted January 14, 1919.   Decided February 18, 1919.

1. PARTITION—*Jurisdiction—Sale of Contingent Interests or Estates —Statute.*

   The purpose of the legislature in enacting chapter 17, Acts 1911, was to empower courts of equity to make a valid sale and conveyance or lease of lands of persons whose interests or estates therein are of such contingent or uncertain nature that good title thereto cannot be passed in the usual modes of conveyancing by such parties themselves, but it was not intended that the interests of such persons, who are *sui juris,* should be sold without their consent.   (p. 417).

2. SAME—*Life Estates—Statute.*

   One to whom a several or joint estate, for life, in land is given by will, contingent upon the death, without lawful issue living at the time of his death, of a life tenant then in possession, with remainder in fee likewise conditioned to vest, upon the same contingency, in a class of persons of a certain description, is authorized by sub-section (b) of section 24b(2), chapter 71, Barnes' Code, to file a bill praying for the sale of the land.   (p. 419).

3. SAME—*Jurisdiction—Sale of Contingent Interests or Estates— Statute.*

   Any person having such interest in land as entitles him, by virtue of said section 24b(2), chapter 71, Code, to file a bill praying for a sale or lease thereof may, when a party defendant to such bill, prevent such sale or lease by refusing to consent thereto. (p. 419).

4. EQUITY—*Partition—Jurisdiction—Sale of Contingent Interests or Estates—Demurrer—Amendment.*

   Courts of equity are vested with large discretion in determining whether or not the existing facts and circumstances are sufficient to justify a sale or lease of lands in such case; and where a de-

83 W. Va.

murrer to the bill is filed by a person whose consent is essential
to the court's right to sell, and the facts and circumstances aver-
red in a bill praying for the sale of valuable farming lands do not
show that any waste is being committed, or that the land con-
tains minerals of a fugitive character which are in danger of be-
ing withdrawn therefrom, or that any other facts and circum-
stances exist indicating a liability of the land to depreciate in
value, the court is not justified in decreeing a sale. In such case
it is not error to sustain the demurrer and dismiss the bill with-
out leave to amend, on the ground that such bill cannot be cured
by amendment. (p. 422).

Appeal from Circuit Court, Jackson County.

Suit by Charles L. Brown, as trustee of William J. Brown,
against William J. Brown and others. Demurrers to bill
filed by part of defendants sustained, and bill dismissed, and
plaintiff appeals.

*Affirmed.*

*Chas. E. Hogg* and *Pendleton, Mathews & Bell,* for
appellant.
*Wm. Beard* and *Somerville & Somerville,* for appellees.

WILLIAMS, JUDGE:

This suit was brought by C. L. Brown, as trustee of Wil-
liam J. Brown, against said William J. Brown, Ephraim W.
Brown and his children and said C. L. Brown in his own
right and Mrs. Helen M. Fowler, his only child, under the
provisions of chapter 17, Acts 1911, made a part of chapter
71, Barnes' Code of West Virginia, for the purpose of sell-
ing a tract of 539 acres of land in which said William J.
Brown was given a life estate by the will of Robert S. Brown,
the father of William J., Ephraim W. and C. L. Brown. All
persons now in being, having any kind of interest or estate,
vested or contingent, in the land, are made parties defendant,
all of whom are alleged to be *sui juris.* Demurrers to the bill,
interposed by Ephraim W. Brown and by some of his chil-
dren, were sustained and the court, being of the opinion that
the bill could not be cured by amendment, dismissed it, and
plaintiff has appealed. The cause is now up for review on
plaintiff's motion to reverse the decree, which motion is made

pursuant to permission previously granted, after due notice thereof to the appellees.

The demurrer challenges the sufficiency of the bill on four several grounds, viz.: First, because the wife of William J. Brown is not made a party to the bill; second, because Charles L. Brown is not such a trustee as is authorized by the statute to maintain the suit; third, because the court is not authorized to decree a sale of the land without the consent of all parties interested therein who are *sui juris;* and fourth, because the bill fails to allege sufficient grounds for a sale.

There is no merit in the first objection for the obvious reason that the wife of William J. Brown has no sort of interest in the land and can never acquire any by virtue of her marital relation. Her husband is not now nor has he been, at any time during his marriage, seized of an estate of inheritance in the land, neither is it possible, under the will of his father, for him to be seized of such an estate at any future time. Hence, by no possibility can his wife ever become entitled to dower in the land.

Before considering the other points raised by the demurrer, it is necessary to consider some of the facts averred in the bill, the truth whereof is admitted by demurrants. Robert S. Brown, deceased, by his will exhibited as a part of the bill, directed that his lands, known as the General George Washington survey, lying along the Ohio River and extending back on the hills and consisting of numerous tracts but constituting one compact body, be divided into three parts equal in value, by lines running from the river to the back Washington lands. To Ephraim W. Brown he gave a life estate in the upper lot, to C. L. Brown a life estate in the middle lot, and to William J. Brown a life estate in the lower lot, with remainder after the death of each life tenant "to the heirs of his body lawfully begotten," and provided that, in the event he should have no such issue living at his death, the land was to go to his two remaining sons for life, with remainder to their heirs. The devise to William J. Brown is in the following language:

"And the said lower or third tract of land next to Ravenswood I will and bequeath to my dear son William J. Brown

83 W. Va.

for and during his life, but subject to the management and use thereof hereinafter directed, with remainder at his death to the heirs of his body, lawfully begotten, but if my said son William J. Brown shall die without issue living at the time of his death, then said lower parcel of land shall pass to my said sons Ephraim and Charles for life, with remainder to their heirs, per sterpes, lawfully begotten.''

Testator provided for a like division of his ''back lands'' into three equal parcels, one of which was to be allotted to each of his three sons ''as may be most convenient, or as they may agree among themselves.'' These parcels were likewise subject to the same limitations and provisions as the river or front lands, and all of the devises were subject to the dower right of testator's widow, who is now deceased. The remainder of his lands he disposed of in the following language:

''I direct that all my other lands and my town property in Ravenswood shall be divided equally between my said three sons in fee simple, that is to say and with this provision that one-third thereof shall pass absolutely in severalty to my said son Ephraim, and that the other two-thirds thereof shall be allotted and pass jointly to my said sons William and Charles to be rented out and managed, or sold and conveyed by them jointly and for their joint benefit, and I make this provision because of the fact that my dear son William J. Brown has been from infancy an invalid in health, and I therefore affectionately commit the trust of the management of his share and interest in my estate under this will to his brother, the said Charles L. Brown trusting to his kindness and sense of justice to do at all times what may seem best in the interest and for the comfort and happiness of his said brother William J. Brown, and full power is hereby given the said William J. and Charles L. Brown to sell and convey all or any part of the lands and property hereinbefore devised to them jointly, in fee simple.''

The right and power to sell, it is observed, is limited to the lands devised to William J. and C. L. Brown in fee.

The bill avers that in a suit in chancery instituted in the circuit court of Jackson county by William J. Brown against the said C. L. Brown and all the other parties to the

present suit, praying for a construction of the will of Robert
S. Brown, deceased, and for the ascertainment of his rights,
powers and duties thereunder, the court by a decree which, it
is averred, is final and binding on all the parties to the present
suit, determined the powers and duties of this plaintiff as
trustee for William J. Brown as follows:

"It was the plain and manifest intention of said will to
create an express trust in the hands of said C. L. Brown as
a trustee for the use and benefit of the plaintiff, and that
under said will said C. L. Brown is entitled to the use, posses-
sion and management of the real estate derived by plaintiff
in severalty under said will and that said C. L. Brown as
trustee is possessed of the legal title to said real estate, and
that the plaintiff has the equitable title only thereto.   The
Court is further of the opinion and doth decree that said C.
L. Brown as trustee is invested with a personal discretion as
to the management of said trust; a discretion that a court of
equity cannot control so long as said trustee acts in good
faith and with honesty.   It is therefore further adjudged,
ordered and decreed, that, as to the one-third of the home
farm of said R. S. Brown mentioned in the will as devised to
said W. J. Brown, and the adjoining back lands, said C. L.
Brown shall retain possession of the same as trustee: and he
is directed to do what he may in his discretion deem best for
the interest, happiness and comfort of said plaintiff as di-
rected by said will paying the taxes on said land, and keeping
the same in repair, and accounting to plaintiff for the residue
if any of the rents, issues and profits to be derived from said
real estate  And it is further decreed that said C. L. Brown
as trustee shall annually account to said plaintiff in person,
or before a commissioner of accounts of this county, for the
said rents, issues and profits of said home farm lands, and
he shall be entitled to a reasonable compensation for his ser-
vices as such trustee."

We are unable to see, in view of the language of the will
devising the lower one-third of the land to William J. Brown,
how the court could have so interpreted the language as to
vest in C. L. Brown the legal title to the land as trustee for
William J. Brown.   But it is not necessary for us to deter-

mine the effect of that decree upon the status of C. L. Brown, as we think the will clearly shows that he, independent of the trust created by the will, whatever its extent, has such interest in the land of William J. Brown as entitles him to file the present bill in his own right. He and Ephraim W. Brown have an equal interest in the land devised to William J. for life. The bill alleges that William J. is now sixty-five years old and that no child has been born to him. If he should die, leaving no children living at his death, C. L. and Ephraim W. would be entitled to a joint estate in the land during their lives. Therefore granting, arguendo, that their estate is now contingent, still Sec. 2, Ch. 17, Acts 1911, Sec. 24b (2), Ch. 71, Barnes' Code, authorizes a person having such interest in land to bring a suit for the sale thereof. That section is:

"Such bill may be filed by any of the following persons: (a) * * * (b) Any person in whom alone or with others a contingent remainder would vest, either at law or in equity, if the contingency or event upon which the remainder is to vest, or determining who the remainderman or remaindermen are, should happen at the time of the commencement of the suit."

The contingency, on the happening of which both Ephraim W. and C. L. Brown would become vested with a legal life estate in the land of William J., is the death of William J., without lawful issue living at his death. It is, therefore, clear that both C. L. and Ephraim W. fall within the class of persons described in sub-section (b), and either one of them is authorized to bring a suit in his own right.

We come now to a consideration of the third objection to the bill raised by the demurrer, which is, that certain ones of the defendants, all of whom are *sui juris,* object to a sale. In reply to this objection, counsel for plaintiff insist that they have not such interest in the land as entitles them to make the objection. Section 8 of said Act, Sec. 24b(8) of the Code, reads as follows:

"If it be clearly shown by the pleadings and proofs that the interests of all persons having any vested, contingent or expectant estates or interests in said property will be promoted by the sale, lease or mining lease of the land, oil, gas,

coal or other minerals to be sold or leased, and the court shall be of the opinion that the rights of no person interested will be materially injured or prejudiced, the court may, with the consent of all persons in being having any vested estate or vested interest in said land, oil, gas, coal or other minerals to be sold or leased, decree the sale, lease, or mining lease of such land, oil, gas, coal or other minerals in such manner and on such terms and in such parcels as may be deemed most beneficial to all persons interested.''

The learned counsel for plaintiff have filed very exhaustive briefs, citing many authorities to sustain the proposition that demurrants have no *vested* interest or estate, and, therefore, are not of that class of persons whose consent is a prerequisite to the right of the court to decree a sale. Strictly speaking, according to the technical rules respecting vested and contingent remainders and executory devises, it may not be said that demurrants have a vested estate. But the question is not so much what particular kind of estate or interest they have, under the rules of the common law, as it is to ascertain in what sense the legislature used the terms ''vested estate or vested interest'' in the particular act in question. In order to determine this it is necessary to consider the general scope and purpose of the Act. Section 1 reads as follows:

''That whenever there is either at law or in equity, in any land, or in any oil, gas, coal or other minerals, any contingent remainder, or any vested remainder, which is liable to open and let in after-born children or to open and let in members of any class, or any executory interest, or executory devise, or any base, qualified, conditional or limited fee, or any other qualified, conditional, limited or determinable estate, or interest, it shall be lawful for the circuit court of the county in which the land, oil, gas, coal or other minerals, or any part thereof, to be sold or leased, are situate, upon a bill filed by any of the persons specified in section two of this act, to decree a sale, lease, or mining lease of such land, or of any such oil, gas, coal or other minerals, or of any one or more of them, as hereinafter provided.''

This section describes the character or quality of estates or interests in land, which must exist in order to entitle a person

having such an interest as is described in any of the sub-divisions of section 2 to file a bill praying for the sale or lease of the land. Section 3 provides that "All persons in being who have any vested, contingent or expectant estate or interest, either at law or in equity, in said land," shall be made parties. Would it not make the statute seem very incongruous to say that the legislature intended to authorize persons, having certain vested or contingent estates or interests in land, to file a bill for the sale thereof, requiring him to make all persons in being in anywise interested therein parties to the bill, and yet, at the same time, deny such defendants, although having the same kind of interest as the plaintiff, a right to object or make defense to the sale? Would not such an interpretation of the statute bring about an inconsistency? We can scarcely conceive that the legislature intended any such result as is contended for.

Courts of equity had no inherent power to sell lands even of persons under disability, whatever their estates therein might be. It is only by virtue of statutes in Virginia and this State, which have existed from very early times, that jurisdiction for such purpose has been conferred upon them; and in such cases the jurisdiction can be invoked only when it is clearly shown that the interest of such persons will be thereby promoted, and the rights of no other persons interested will be violated. Such statutes have been upheld on the theory that the legislature has the power to authorize a conveyance on behalf of persons under disability when it is shown that their interests will be promoted thereby. But we seriously doubt the constitutional right and power of the legislature to authorize a court to sell the lands, or any vested interest therein of a person who is *sui juris,* without his consent, simply for the purpose of reinvesting the funds for his benefit. The *jus disponendi* is a property right which the policy of the law has always been to allow the owner, when *sui juris,* to determine for himself. From time immemorial it has been one of the fixed principles of the common law, to guard jealously individual property rights, and especially is this true in respect to estates of freehold in land.

It is unnecessary to determine the character of interest the

children of Ephraim W. Brown have in the land, whether a
vested or contingent interest or estate, as his objection alone
is enough to defeat the sale. The act was never intended to
authorize one person, having a certain defined interest or
estate in land, to file a bill to sell it and deny to another, sim-
ilarly situated, who is required to be made a party to the bill,
any right to object thereto. After a very careful considera-
tion of the question, we have concluded that the chief purpose
and design of the statute was to provide a means whereby a
valid conveyance or lease of lands might be made, by persons
having uncertain estates or interests therein, who, because of
such uncertainty, could not make valid title thereto, and that,
as a prerequisite to the right of the court to make such con-
veyance, the consent of all persons in being, who are *sui
juris* and have such interest, whether vested or contingent,
as would entitle them to bring the suit, is necessary. The bill
avers that plaintiff is advised that William J. Brown will give
his consent, but his consent alone is not enough, there are
others interested who do not consent. Ephriam W. Brown
has by his demurrer expressed his objection to the sale, and
holding as we do that his consent is necessary to give the court
power to sell, it is unnecessary to enter upon a consideration
of the other of the averments of the bill to determine whether
they are sufficient to show that the interest of the parties
having "vested, contingent or expectant estates or interests"
in the land, will be promoted by a sale thereof. It suffices to
say that, in view of the quantity and quality of the land,
the manifest purpose of the testator to create an estate therein
which would, in the future, vest in fee in his grandchildren,
after the life estates of his three sons,—a purpose not incon-
sistent with public policy and violative of no positive rule of
law,—we hardly think the price which plaintiff alleges he
has been offered and thinks he can get for the land, and the
proposed plan of reinvesting the funds in Government bonds
or other valid securities, to be held in the same manner and
subject to the same provisions and for the same persons as
the land itself is now held under the will, and all the other
circumstances, are not enough to justify a sale. The statute
evidently vests courts of equity with a large discretion in

determining, from all the facts and circumstances appearing, whether or not a sale will be beneficial to all the parties concerned. The chancellor has not abused his discretion by refusing to entertain the suit and dismissing plaintiff's bill upon demurrer. It was his right and duty to consider the interests of those who are to come into the possession of the land after the life estates have ended, and determine whether or not they would be benefitted by a sale, as well as the life tenants. No particular circumstances or conditions are alleged to exist now, which would make a present sale more advantageous than a sale at any future time. There is no showing that the land is liable to depreciate in value, and nothing to indicate that it may not grow in value as the years go by. The fact that William J. Brown is now sixty-five years of age and is becoming less able as he grows older to cultivate the land, does not show good cause to sell it. If he, with no family but himself and wife, and with the advice of plaintiff, is not able to make a comfortable living upon the 539 acres of land, nearly half of which, according to a map filed with the bill, appears to be river bottom land, only about 25 acres of which is subject to overflow, such inability must be attributed to poor husbandry rather than to any failure in the land to yield its increase.

For the reasons stated, appellant's motion will be overruled and the decree affirmed.

*Affirmed.*