### DETERMINED BY THE

# SUPREME COURT OF APPEALS

### OF

# WEST VIRGINIA

## CHARLESTON.

T. J. FERRELL IN HIS OWN RIGHT AND AS GUARDIAN, *et als., v.*
C. H. DEVERICK *et als.*

Submitted October 14, 1919. Decided October 21, 1919.

1. INFANTS—*Appointment of Clerk as Guardian Ad Litem Valid.*
   A decree will not be reversed solely because the court rendering it appointed its clerk guardian ad litem to represent infant defendants in the cause then pending before it. (p. 5).

2. CONSTITUTIONAL LAW—*No Vested Rights in Rules of Evidence.*
   A party to a suit prosecuted under sections 24b (1)—24b (12), ch. 71, Code, is not deprived of any constitutional right by, that provision of section 24b (7) which authorizes the court to hear evidence in the cause in open court, so long as he is accorded a fair opportunity to present his side of the case and to submit all the facts necessary to a just determination of the controversy. The law recognizes no such thing as a vested right in rules of evidence. (p. 5).

3. SAME—*Decree Authorizing Lease of Land Subject to Contingent Remainders Not Wanting in Due Process of Law.*
   Where a suit is instituted under the provisions of sections 24b (1)—24b (12), ch. 71, Code, for the purpose of obtaining a decree authorizing an oil and gas lease on land subject to contingent remainders, and the suit in effect validates a prior lease made by the present life tenant of such land and others, the life tenant is not deprived of property without due process of law, although the final decree gives him fewer and less valuable rights than were his by virtue of the former lease; it appearing that the prior lease accorded him greater rights

than he was entitled to, and that the decree gave him as great a return therefrom as he could properly have claimed under the terms of any lease within the power of the lessors to grant. (p. 6).

4. LIFE ESTATES—*Decree Authorizing Lease Not Violation of Rights of Life Tenant.*

Nor was such decree of lease beyond the power of the court to grant on the ground that it was made without the consent of the life tenant as holder of a vested estate or interest in the land, his consent to the prior lease being sufficient evidence of his willingness and consent to enter into such a lease, and the purpose of the suit being merely to validate such prior lease. (p. 6).

5. ASSIGNMENTS—*"Assigns" Defined.*

The word "assigns" generally comprehends all those who take either immediately or remotely from or under the assignor, whether by conveyance, devise, descent, or act of law. (p. 10).

Appeal from Circuit Court, Roane County.

Suit by T. J. Ferrell, in his own right and as guardian of his minor children, Fannie M. Ferrell, his wife, and others, against C. H. Deverick, such minor children, and others. From two decrees entered in the cause in favor of plaintiff United Fuel Gas Company, defendant C. H. Deverick appeals.

*Affirmed.*

*Thos. P. Ryan,* for appellant.
*Carl C. Douthitt,* and *R. G. Altizer,* for appellees.

LYNCH, JUDGE:.

C. H. Deverick, believing his interests imperiled thereby, has appealed to this court to review and reverse two decrees entered March 5, 1918, in the chancery cause brought by T. J. Ferrell in his own right and as guardian of the minor children of himself and his wife, Fannie M. Ferrell, coplaintiff with him and others against Deverick, the minor children of the Ferrells and others, co-defendants, the chief object of which was the validation or legalization of an oil and gas lease executed by the plaintiffs, Deverick and others, January 1, 1916, to United Fuel Gas Company covering a tract of 115 acres of land in Roane County. Title to the land leased, so far as now concerned, originated in a

deed dated January 3, 1899, by Harrison B. Smith, acting as
special commissioner and in his own right, to Fannie M. Fer-
rell, the wife of Thomas J. Ferrell, and their children, then and.
now minors, whereby Fannie M. Ferrell acquired a freehold es-
tate for her life in the land, and the children of herself and her
husband who should survive her an estate therein in remain-
der. Mrs. Ferrell and her husband are now living and are
the parents of the infant defendants named in the bill in this
cause. The language of the granting clause is: "Doth grant
unto the said Fannie M. Ferrell, wife of Thomas J. Ferrell,
during the term of her natural life, remainder at death to such
children of the said Fannie M. Ferrell by her husband Thomas
J. Ferrell as may survive her."

The life tenant and her husband, no doubt acting in the ut-
most good faith, on February 20, 1906, undertook to convey the
fee simple title to the land to A. T. and S. R. Ferrell, neither
grantee being a contingent remainderman, but reserved one-
third of all oil, gas and minerals underlying the tract with op-
erating rights and privileges, and all rentals and royalties aris-
ing from the one-third of all oil, gas and minerals. The fu-
tility of that instrument to accomplish the object contemplated
by the grantors, who deemed themselves competent thereby to
pass the fee simple title to the land to the grantees, prompted
them, when advised of the lack of power to effect the purpose in-
tended, to institute in the circuit court of Roane County the
summary proceeding authorized by chapter 83 of the Code to
obtain permission to do what they had vainly essayed to do
without such permission, with the result that the court empow-
ered the guardian of the contingent remaindermen to execute to
the grantees in the unauthorized deed what it was assumed
would be a valid conveyance of the fee simple title to the 115
acres of land, and the guardian did make, execute and deliver to
the grantees a deed, dated September 25, 1912, such as the court
granted him permission to make, subject, however, to the res-
ervations contained in the deed of February 20, 1906.

The grantees in these two deeds, A. T. Ferrell and S. R. Fer-
rell, the one by the life tenant and her husband alone, the other
by her husband as the father and guardian of their infant chil-
dren, joined in a deed dated October 1, 1912, purporting to

grant to C. H. Deverick, appellant, the fee simple title to the 115-acre tract, reserving, however, "two-thirds (2/3 )of the oil, gas and other minerals, within and underlying said tract of land, which is hereby reserved and excepted from the operation of this deed." And on January 1, 1916, A. T. and S. R. Ferrell, C. H. Deverick, Fannie M. Ferrell, the life tenant, and T. J. Ferrell, her husband and the guardian of their children, joined in executing to the United Fuel Gas Company an oil and gas lease covering the 115 acres.

To remove such doubt as may have existed as to the efficacy of this lease to accomplish the end aimed at by the parties thereto, and to obtain a judicial confirmation thereof so as to render it invulnerable from attack for lack of competency on the part of the lessors, plaintiffs instituted this suit and obtained the decrees now here for review upon appeal.

Of the sixteen specific assignments in the petition for the writ, only eleven of which are mentioned in appellant's brief, the points really demanding attention are the sufficiency of the bill, and the right of the court (a) to appoint its clerk guardian ad litem; (b) to allow proof to be taken at the bar of the court and in its hearing, and to read and consider the proof, when so taken, in passing upon the merits of a cause brought and prosecuted, as this is, under the authority of section 24b (1) et seq. ch. 71, Code; (c) to lease land without the consent of an adult interested therein with contingent remaindermen, and thereby annul a lease already executed by him to the proposed lessee. These grounds of error we propose to discuss briefly and dispose of in the order stated; first, however, announcing our purpose not to enter upon a consideration of the merits of the cause for the purpose of adjudging the extent of the interests of Fannie M. Ferrell, the life tenant, under the deed of January 3, 1899, as affected by the subsequent deeds and lease in which she joined, or of A. T. and S. R. Ferrell, the grantees of herself and husband in the deed of February 20, 1906, as affected by the subsequent deed and lease in which they also joined, or of C. H. Deverick, grantee of the deed of October 1, 1912, as affected by the lease of January 1, 1916, in which he likewise joined. The rights of these parties these instruments definitely fixed and they have acquiesced in the shares so established. But we do dis-

cover and in another connection·later note a concession to Deverick in the lease of January 1, 1916, in excess of the interest allowed him by the decrees complained of, indeed in excess of the interest to which he is entitled even in the aspect of the case most favorable to him.

We look in vain for defects in the bill, and counsel for Deverick points to none such as warrants a ruling on the demurrer thereto different from that shown in the decree overruling it. Nor do the decisions cited sustain the proposition stated by him as to the right of a court to appoint its clerk guardian ad litem for an infant who is a defendant in a cause pending therein. They do not question the propriety or legality of such an appointment, except inferentially, and say only that "where an infant is not able to obtain a responsible guardian, or where no one will consent to act for him, and in other proper cases, the court may appoint one of its own officers," (22 Cyc. 652); or, "if none can be found to accept the appointment or appear for the infant, it is the duty of the court to appoint one of its officers, whom they can control, and see that he enters an appearance." *Greenup* v. *Bacon,* 1 T. B. Mon. (Ky.) 108. In *Fisher* v. *Lyon,* 34 Hun. 183, the question was not whether the court lawfully could appoint its clerk guardian ad litem, but whether it could dispense with the security required by statute of such guardians. In *Brown* v. *The Henry Pratt,* 4 Fed. Cas. 384, the decision rested on a rule of court requiring guardians ad litem to give security for costs the same as if personally the parties in interest, the court saying: "As a general rule guardians ad litem cannot, in admiralty, be excused from giving the ordinary stipulations, and if it be necessary to assign a guardian by the court, the party not being able to produce a responsible person, the court would confer the trust on some standing officer, and then discharge him of the liability for costs." There appears to us no sound reason, and appellant advances none, and no authority cited or found states any, for reversing a decree solely because the court rendering it appointed its clerk to represent the infant defendants and safeguard their rights and interests in the litigation.

As to the right to permit testimony to be taken at the bar of the court and to consider it in determining the rights of the

parties to a cause prosecuted under the sections of the statute cited, nothing further scarcely need be said than that the statute itself (section 24b-7, ch. 71, Code) amply warrants such procedure. There is no longer any doubt as to the right of the Legislature to prescribe or create rules of evidence to be observed by judicial tribunals, limited only by constitutional guaranties or declaration of a contrary rule upon the same subject. If thereby a party to a litigation is not deprived of a fair opportunity to present his defense, and for that purpose to submit all the facts necessary to a just determination of the controversy, what cause he has for complaint is not evident. 10 R. C. L. 863; 12 C. J. 982. The law recognizes no such thing as a vested right in rules of evidence. As they relate only to the remedy, the Legislature may change them without invading the legal or vested rights of the parties. *State* v. *King,* 64 W. Va. 546, 593. Besides, so far as disclosed, Deverick did not object but presumably was present and acquiesced and likely participated in the necessary preliminary inquiry prior to the entry of the decrees of which he now complains. And there is now no suggestion by him or by any other person interested of any prejudice resulting from the action of the court in so hearing the evidence.

Just what foundation there is for the implication underlying the criticism that the decrees reviewed purport to lease the property of appellant without his consent, and thereby to effect the annulment of a lease on the same land theretofore executed by him and others to the same lessee, is not clearly apparent. Complaint is made that the decrees give Deverick fewer and less valuable rights than were his by virtue of the lease of January 1, 1916. Though these decrees may give him less than the prior lease authorized, his return under the latter being the one-third of all moneys therein named or due thereunder, yet the former is not erroneous because of that reduction, for the lease gave him a greater right than he was entitled to, but the decrees give him as much as he could properly have claimed under the terms of any lease within the power of the lessors therein to grant.

An examination of the estates conveyed by the respective deeds and lease shows the correctness of these decrees. By the deed of January 3, 1899, Mrs. Ferrell acquired only a life estate

in the tract of 115 acres, giving her no right to any part of the corpus of the estate, but as incidental thereto merely a right to interest on the royalty oil and gas well rentals from such wells as should be authorized and drilled subsequent to the commencement of her life estate.  *Wilson* v. *Youst,* 43 W. Va. 826; *Ammons* v. *Ammons,* 50 W. Va. 390; *Eakin* v. *Hawkins,* 52 W. Va. 124.  See also *Minner* v. *Minner,* 84 W. Va. ————, 100 S. E. 509, recently decided, where the authorities are collected and discussed.  Wherefore she could not and did not by her deed of February 20, 1906, pass to her grantees an interest greater than she possessed.  Her attempted reservation of one-third of all oil, gas and other minerals underlying the tract and all rentals and royalties from that one-third was more than her rights as life tenant embraced, and therefore more than she was entitled to reserve.  As life tenant she could claim only the interest on the proceeds from the royalty oil and gas well rentals, the property being undeveloped and unleased as to those minerals, so for as the record discloses, prior to January 1, 1916, the date of the first lease to United Fuel Gas Company.  It is unnecessary to determine whether her attempted reservation of more than was her right is sufficiently broad to admit of construction as a reservation of her right to the interest on the proceeds from the royalty oil and gas well rentals.  Assuming the correctness of such construction and the power thus to reserve that interest from the operation of the deed, she has then conveyed to her grantees only a life estate in the surface of the tract without regard to the underlying minerals, treating them, as they must be, as a part of the corpus thereof.  The summary proceeding to sell the contingent interests of the infant remaindermen in aid of the deed of 1906, being instituted under chapter 83 of the Code, and not under sections 24b (1) et seq., ch. 71, relating to the sale or lease of land subject to contingent remainders, such as this was, the deed of T. J. Ferrell, guardian of the infant children, to the same grantees gave them no greater right than they possessed by virtue of Mrs. Ferrell's deed of 1906, except that it bestowed upon them the contingent estate in remainder of the infant children, with the exception of one-third of the oil, gas and other minerals which was reserved.  The interests of A. T. and S. R. Ferrell in the tract then embraced the life estate of

Mrs. Ferrell and the contingent estate in remainder, including two-thirds of the oil, gas and other minerals. This interest their deed of October 1, 1912, conveyed to Deverick, but reserved the two-thirds of the minerals just referred to.

In the lease of January 1, 1916, in which, among others, Mrs. Ferrell, the former life tenant, and C. H. Deverick, the present holder of that estate, joined as lessors, it was stipulated that the latter was to receive "one-third of all moneys herein named or due under the lease." This was more than he as life tenant was entitled to receive, since the corpus of the estate, including the royalty oil and gas well rentals, belonged to the remaindermen, when ascertained according to the terms of the deed of 1899, or, if the condition of that instrument should not be fulfilled, then to the heirs at law, and further because, as we have assumed, Mrs. Ferrell has reserved her right as life tenant to interest on the proceeds from such royalty and rentals. However, by joining in the lease as lessor, and thus consenting to the disposition therein made to Deverick of one-third of the moneys due under the lease, she has authorized to be included therein her right so reserved in the former deed, thus giving to Deverick the one-third of the interest on the proceeds from the royalty oil and gas well rentals, when and as produced from the land during her lifetime, and not thereafter. On the other hand, if we assume that the attempted reservation in the deed of 1906 cannot be so construed, and that Mrs. Ferrell's right to such interest passed by virtue of the deed to Deverick, the latter, by joining in the lease of 1916, has consented to receive the share therein stipulated.

Under either construction the decrees give him all that he could properly take under the lease. They correctly recognize that the whole of the proceeds from the well or wells drilled on said land and from the royalty oil are the property of such children of Mrs. Ferrell by her husband, Thomas J. Ferrell, as may survive her, or of their assigns, and provide that such proceeds shall be invested and kept at interest during the life of Mrs. Ferrell, and that the interest therefrom shall be paid "to the owners of the life estate aforesaid, or their assigns," specifically giving to Deverick in a preceding sentence a one-third share,

thus giving him all that the lease of January 1, 1916, passed and could pass to him.

But Deverick further insists that, in the absence of his consent as holder of a vested estate or interest in the land, the court was without power to decree a sale or lease thereof. Without discussing the effect of the proviso contained in section 24b (8), ch. 71, making such consent unnecessary where the property to be leased is oil, gas or other volatile or fugitive substance in danger of being withdrawn or drained away, has not the appellant already expressed his consent and willingness to make such a lease by entering into the prior lease of 1916? It is true he did, as he insists, object to the curtailment by any decree entered in the cause of the rights and interests claimed by him in the leased premises as specified in the lease to the United Fuel Gas Company of January 1, 1916. But what boots it if he did object on that ground alone? He did not express an intention or purpose or desire not to lease the land for oil and gas purposes at all or to any particular lessee, but merely an unwillingness to accept less than the lease he had already executed saved to him. Had he declined to enter into any contract respecting the oil or gas contained in the land, as was done in *Brown* v. *Brown,* 83 W. Va. 415, 98 S. E. 428, that case might apply to his relief here. But his willingness to lease the land to the proposed lessee for the production of oil and gas appears from the fact that he first united as lessor in a contract of that kind, one which this suit was brought to correct and validate in order to make it legally binding and justly efficacious in the accomplishment of the purposes contemplated by the parties thereto. In other words, he prefers to stand upon the terms of a contract that purports to give him what he cannot lawfully insist upon, and refuses to be bound by a contract between the same parties, touching the same subject matter and conceding to him all that he can lawfully exact under the circumstances of this case, and that too in a suit, to which he is a party, brought to perfect his title to and interest in the land. In no event, however, could he prevent the execution of a lease directed by the court in such a cause as this is in so far as concerns the interests of the contingent remaindermen, though perhaps he might prevent operations thereunder.

The death of one of the children of Mrs. Ferrell and her husband and the birth of others during the period of her life estate cannot and does not alter the respective rights and relative interests of the parties thereto, in any degree. The provisions of that deed remain unalterable as to the rights of the parties thereto or their assigns until the termination of the life estate. When that occurs as the result of the death of Mrs. Ferrell, the child or children born to her and her husband who survive her, whether one or all of them, or their assigns, take the entire fee in the land in controversy, unless in the meantime it is sold or leased, as here, under the provisions of chapter 71 of the Code, and if it is, the purchaser will acquire an indefeasible title thereto, and the lessee the right to operate thereon under the terms of the lease; but the proceeds of the sale or lease are to be substituted for and held intact in lieu of the land during the continuance of the life estate, with this qualification, that the life tenant or her assigns of the whole or any part of such estate, as the case may be, are entitled to the whole or the relative part of the interest on such proceeds during her life.

To the extent the decrees provide for the collection and distribution or disposal of the delay rentals and the proceeds derived from the operation of the leased premises and the interest thereon, until the termination of the estate for the life of Mrs. Ferrell, they are not subject to criticism. The same thing is true as to the directions given therein respecting the revenues to accrue from the lease after the death of the life tenant, and the provision for the payment thereof to such of her children as may survive her, if then of age, or to their assigns. The word "assigns", as used in the decree, comprehends all those who take either immediately or remotely from or under the assignor, whether by conveyance, devise, descent, or act of law (*Erichsen* v. *Tapert,* 172 Mich. 457; *Brown* v. *Crookston. Agricultural Ass'n,* 34 Minn. 545, 547; *Glenn* v. *Caldwell,* 74 Miss. 49, 52; *Smith* v. *Baxter,* 62 N. J. Eq. 209; 5 C. J. 1310), and therefore includes within its scope such persons as have acquired or may acquire the interests of the infant contingent remaindermen by virtue of proper legal proceedings instituted under statutory authority. Under this construction the decrees correctly dispose

of the case, so far as this appellant is concerned, and will be affirmed.

*Affirmed.*