OF THE

## STATE OF IOWA

AT

## DES MOINES, SEPTEMBER TERM, 1908.

AND IN THE SIXTY-SECOND YEAR OF THE STATE.

---

J. A. PRICHARD, Appellee, v.- JOHN MULHALL, Appellant.

**Specific performance:** MERCHANTABLE TITLE: WAIVER OF DEFECTS.
1 Title by descent may be shown without administration of the
ancestor's estate, by the recording of affidavits as provided by
statute, setting forth the names of all his heirs, and. stating
that all debts of the estate have been paid; and an abstract of title
disclosing such a record presents a merchantable title in the
heirs, a tender of which, together with a deed executed by
such heirs and their husbands and wives, is a sufficient offer
to perform a contract to convey a good and perfect title, and
will support a decree for specific performance; especially where
four years had elapsed .after the death of the ancestor and· no
objection to the title as thus disclosed by the abstract was made.

**Same:** ESTOPPEL: WAIVER. Where a party has made his objections
2 to a title as disclosed by the abstract and the same has .been

corrected and returned to him without further objection, he cannot after litigation had been commenced change his ground of objection thereto; nor can he contend that there was no consideration to support his waiver of further objection.

**Contract to convey land by warranty deed:** DEATH OF GRANTOR: SUBSEQUENT COMPLIANCE. The plaintiff in this action for specific performance tendered the purchaser a warranty deed, and upon its refusal left the same with the clerk of courts or reporter pending the trial for the benefit of the purchaser, and after the same was made a part of the record in the action it was lost or destroyed without fault of plaintiff. During an appeal the owner of the land died and the plaintiff tendered in lieu of the warranty a quitclaim deed from the sole heir of the former grantor, a special warranty from himself and wife and an order of court for a deed from the original grantors administrator. *Held*, that this amounted to a compliance with the contract to convey by warranty deed, since it was defendant's fault that he refused the original warranty deed.

**Rents and profits:** RECOVERY. A purchaser of land is entitled to the rents and profits from the date of his right to the possession, but he can recover neither rents nor taxes from one who never had the possession and use of the premises.

**Unpaid purchase price:** INTEREST. A purchaser of land cannot complain of a decree awarding interest upon the unpaid purchase price, on the ground that he had not had possession of the premises, when he was tendered the possession but refused it.

**Specific performance:** ALTERNATIVE DECREE. A decree awarding specific performance of a land contract may be in the alternative allowing defendant to settle by the terms of his contract or to pay the full purchase price.

*Appeal from Woodbury District Court.*—HON. FRANK R. GAYNOR, Judge.

WEDNESDAY. OCTOBER 28, 1908.

SUIT in equity for the specific performance of a contract for the sale of land. Defendant admitted the contract, but pleaded various defenses, which will be referred to in the body of the opinion. Trial to the court. De-

cree and judgment for plaintiff, and defendant appeals.
—Affirmed.

*Jepson & Jepson,* for appellant.

*J. A. Prichard* and *J. W. Hallam,* for appellee.

DEEMER, J.—This controversy was once before us in
the form of an action at law, and the opinion on that
appeal will be found in 127 Iowa, 545.    After the re-
versal, the plaintiff so amended his petition as to make
his action one in equity for the specific performance of
the contract.    Many issues were tendered by defendant;
the pleadings covering something like nineteen pages of
the printed abstract.    We shall only refer to such of these
issues as are relied upon by counsel for appellant in his
argument.    The contract between the parties being in
writing and admitted, we here set out the material parts
thereof:

The sum of $200.00 cash in hand paid by the party
of the second part to the party of the first part, the re-
ceipt whereof is hereby acknowledged.    The party of the
second part shall execute to the party of the first part
on the 1st day of March, 1903, or assume a note in the
sum of $2,000.00 payable on or before three or five years
from the date of the same, bearing interest at the rate
of 6 per cent per annum, payable annually, and which
shall be secured by a mortgage upon the above described
premises, which shall be a first lien thereon, and shall
also on the 1st day of March, 1903, pay in cash to the
party of the first part the difference between the amount
this day paid in cash and the mortgage to be executed
as above stipulated and the entire purchase price of
said premises.    The said party of the first part shall
within thirty days from the date hereof furnish to the
said party of the second part, at his office in Sioux City,
Iowa, an abstract of title to the above described premises,
which shall show in Robert Glenn a good and perfect

title, free and clear from all liens and incumbrances, and, if said abstract of title so furnished does not show good and perfect title, then the said party of the first part shall repay to the second party the sum of money this day paid to the party of the first part, and this contract shall thereby become terminated and at an end. Possession of the above described premises shall be given to the party of the second part on the 1st day of March, 1903, in the same condition that they are now, ordinary wear excepted. It is also agreed that the party of the second part may at any time before March 1st make the deferred payment as above mentioned and execute the note and mortgage as stipulated, and receive a deed from first party for said premises, and shall be entitled to interest on the deferred payment due March 1st, at the rate of five percent per annum from the time of payment up to March 1, 1903. Upon the party of the second part making the payments herein stipulated and keeping and performing the terms and conditions of this contract on his part to be performed, then the party of the first part will execute, or cause to be executed, by Robert Glenn, to the party of the second part, a warranty deed to the above described premises, containing the usual covenants of warranty.

The defenses to the action are that the contract is so inequitable that it should not be enforced; that plaintiff has been guilty of such delay in attempting to enforce it that he is not entitled to relief in equity; that plaintiff never furnished an abstract showing good and perfect title, as he undertook to do under the contract; that the title offered by plaintiff was neither good nor marketable; and that the abstract furnished showed such defects and clouds as that defendant is not required to take and pay for the land. Some minor questions regarding taxes, interest, and the right to rents and profits are also involved. There is no such showing of hardship or inequality in the contract as to justify a court of equity in refusing performance. Plaintiff's delay in his attempt to enforce is fully explained. This explanation, aside

from the fact that he commenced an action at law to
enforce it some years ago, the action being the one here-
tofore considered by us, will appear during the course
of the opinion.   Pursuant to his contract, plaintiff fur-
nished defendant with an abstract of title to the land,
which defendant submitted to his counsel for their legal
opinion.   These counsel made four objections to the ab-
stract, and the abstract was returned with these objections
to plaintiff.   Plaintiff turned the abstract, with these ob-
jections, over to the abstracter with directions to cure
them.   Attempt was made to do so, and the corrected
abstract was returned to defendant, who, in turn, deliv-
ered the same to his counsel.   Upon re-examination coun-
sel stated that all their objections had been met, save one
known as the "fourth," and that this had not been cured.
This last report of defendant's counsel was never com-
municated to plaintiff either by defendant or his counsel,
and the abstract was retained by them down to the time
of trial.   Plaintiff had no knowledge that defendant was
making any objections to the abstract as corrected until
faced with them upon the trial.   It will be noticed that,
according to the terms of the contract, the deed for the
land was not to come from plaintiff but from one Robert
Glenn.   A warranty deed of the land was obtained from
Robert Glenn and tendered to defendant March 2, 1903,
the 1st being on Sunday, and defendant was offered pos-
session of the land.   This defendant refused to receive,
giving as a reason that he could buy the land cheaper
from some one else, that money was scarce, and that it
was difficult for him to obtain the cash wherewith to meet
his many contracts.   His only claim about the title was
that he understood some one was claiming it as an "ac-
cretion."   The deed was left with the clerk of courts,
produced on the trial of the law case, and left with the
court reporter.   By the latter it was either lost or sent
to defendant's attorneys, in whose possession it was de-

stroyed by fire. It was produced and left in court at the first trial for defendant's benefit. During the pendency of the lawsuit, and before the case was determined upon appeal, Robert Glenn died. Thereupon plaintiff secured a quitclaim deed from James Glenn, who it is claimed was the only heir at law of Robert Glenn, and upon this trial tendered it to defendant and brought it into court for his use and benefit. He also secured an order in probate authorizing the administrator of the Robert Glenn estate to make a deed to defendant, Mulhall. Plaintiff, Prichard, and his wife also executed a special warranty deed to defendant . over date June 4, 1906, conveying the land in dispute, and warranting the title as against the lawful claims of all parties prior to March 2, 1903, and this was also tendered to defendant. Upon the trial of this case, it was shown that there were no conveyances of the land after February 1, 1901, and that there were no judgments, liens, or incumbrances upon or against the land, except taxes that accrued after the sale to defendant.

The fourth objection made by defendant's attorneys to the abstract had reference to the title of Robert Glenn. It was claimed that it did not appear that he was the

1. SPECIFIC PERFORMANCE: merchantable title: waiver of defects.

owner, for the reason that title came by descent from John Glenn, Sr., and that there had been no administration of his estate, and no showing that the subsequent conveyances to Robert Glenn were made by all the heirs of the deceased, John Glenn. John Glenn died intestate April 8, 1899, and administration of his estate might have been had at any time within five years. The abstracter did show a conveyance by six grantors, with their husbands and wives where married, to Robert Glenn and William Glenn, and a conveyance by William Glenn, unmarried, to Robert Glenn, of all of the property in controversy. The deeds did not show who were the heirs of John

Glenn, Sr., deceased, nor that the eight persons, grantors and grantees, were the sole and only heirs. But it did show two affidavits, duly attested and recorded, to the effect that these parties, eight in number, were all of the heirs of John Glenn, deceased; that, while no administration of John Glenn's estate had been had, all debts against the estate were fully paid and discharged. When the time came for defendant to perform, but one year remained for taking out letters of administration on the estate of John Glenn, Sr., and plaintiff, in view of defendant's failure to make known his objections to the abstract after it was corrected and returned, may well have assumed, as he says he did, that by reason of the short time remaining for the filing of claims, all objections to the showing of title in Robert Glenn were waived. Moreover, we are of opinion that the defect was not such as to create a cloud destroying the merchantability of the title as shown by the abstract. Our probate procedure is somewhat lame with reference to showing the devolution of titles to lands which pass by descent. True a list of heirs is required to be filed, but this is not binding upon any one. Under our statute permitting the filing and recording of affidavits to explain apparent defects in the title (Code, Section 2957), we think the showing in this case as to the descent of the land was all that can be required, and that on the face of the abstract all the heirs of John Glenn, Sr., had conveyed their interests in the land to Robert Glenn.

The only remaining thought is that there might be some creditors of John Glenn, Sr., who would be entitled to insist upon administration, and eventually to have the land or some part thereof subjected to the payment of claims. This, of course, was possible, but it hardly reaches to the plane of a probability. There is no occasion for administration of the estate of one deceased. Parties in interest may settle their rights without going into a court

of probate. Upon the death of an ancestor, his realty passes immediately to his heirs, and ordinarily an administrator has nothing to do with it. Of course, it may be sold for the payment of debts; but not unless the personal estate is insufficient for that purpose. We are of opinion that the affidavits in this case showing the payment and discharge of all debts, especially in view of the fact that four years had elapsed after the death of the intestate, and the further fact that defendant made no objection to the abstract after its correction and return, is a sufficient answer to the claim that the abstract did not show title. There was a clear waiver by defendant of any defects in the abstract after its receipt and acceptance by him upon its correction by plaintiff.

Moreover, the trial court was justified in finding that, when tender was originally made of the deed, he, defendant, pointed out his objections, and could not after suit brought mend his hold. *Donley v. Porter,* 119 Iowa, 542. The most that can be said in this connection is that he claimed the title was defective, in that the land was an accretion to some other tract. He makes no such claim now. We need not cite further authorities to show waiver and an estoppel on the part of defendant. That the alleged defects were not a sufficient cloud to justify a decree for defendant, see *Stevenson v. Polk,* 71 Iowa, 278.

2. SAME: estoppel: waiver.

It is contended for appellant that it is essential to such a waiver as is relied upon by plaintiff that it be supported by a consideration. This is not true as a matter of fact. A waiver is an intentional relinquishment of a known right. A consideration is not necessary in all cases; but, if it were, there was a consideration here. After defendant returned the abstract with the objections found by his counsel, plaintiff went to the labor and expense of having the defects corrected, and then returned the abstract to the defendant. Defendant did not again

return the abstract, nor did he make any objections thereto which came to plaintiff's notice. All this was done before the time had arrived for performance. On March 2d plaintiff tendered a deed to defendant—he (defendant) already having the abstract—and at that time defendant, as we have found, made no objections to the title as shown by the abstract. He planted his refusal to perform upon other grounds, and he does not rely upon the objections so urged at this time. That this amounted to a waiver and constituted an estoppel on defendant is clear. *Railroad Co. v. McCarthy,* 96 U. S. 267 (24 L. Ed. 693); *Taylor v. Insurance Co.,* 9 How. 390 (13 L. Ed. 187); *Lessenich v. Sellers,* 119 Iowa, 314; *Harris v. Chipman,* 9 Utah, 101 (33 Pac. 242); *Donley v. Porter,* 119 Iowa, 542; *Hudson v. N. P. R. R.,* 92 Iowa, 231. Of course, this waiver must not be so construed as to obligate defendant to take a title which is, in fact, defective, provided that defect is not occasioned by the defendant's own acts or conduct.

II. This brings us to another point relied upon by defendant, and that is that the title is in fact defective for the reasons already pointed out, and for the further

3. CONTRACT TO
CONVEY LAND
BY WARRANTY
DEED: death
of grantor:
subsequent
compliance.

reason that he should not be compelled to accept a quitclaim deed from Thomas Glenn and a special warranty from plaintiff himself; his contract being to accept a deed from Robert Glenn. Objection is also made to the deed of Thomas Glenn because it is a quitclaim, and to the plaintiff's conveyance because it is a special warranty one. It must be remembered that, at a proper time, plaintiff tendered defendant a warranty deed from Robert Glenn according to the terms of his contract. This deed was left with the clerk of the court for the use of the defendant upon the prior trial, and was made a part of the record in that case, and was afterwards lost or destroyed. This deed is in the record now before us, and

is doubtless a copy taken down by the reporter upon the former trial. It is apparently a part of the record, and was received without objection. It is duly acknowledged and in proper form for recording. If lost or destroyed since the former trial, this does not seem to have been due to any fault of the plaintiff. Robert Glenn died pending the appeal of the other action to this court, and plaintiff, in order to cure any defects in the title occurring since the other trial, has presented and offered to defendant a quitclaim deed from Thomas Glenn, the sole and only heir of Robert, a special warranty deed from himself and wife, and an order of the probate court for a deed from the administrator of Robert Glenn's estate. This was more than he was required to do; but it cures any actual defects in the title occurring since the death of Robert Glenn. In this connection, and in view of the waiver regarding defects in the abstract, it is well to note that at the time this trial began in the district court the time had long passed for administration of the estate of John Glenn, Sr.; that is to say, the five-year period expired some time in the year 1904. So that at the time of trial the title was substantially perfect. This is upon the theory that affidavits may be used to show heirship and to clear up apparent defects in a chain of title. That this may be done under our statute is manifest from a reading thereof. See, also, Warvelle on Abstracts, Sections 313, 536; Maupin on Marketable Titles (2d Ed.), 728, 729. It should be remembered that defendant at no time attempted to rescind the contract, nor did he ever demand the return of the consideration money paid by him. The evidence also shows that defendant's refusal to perform was based upon the state of the money market, and to a claim at one time asserted, but now abandoned, that the land was "accretions." If defendant has not the Robert Glenn deed, it is his own fault, for it was left with the clerk of court or the short-

hand reporter for his use and benefit and he can not now defend for want of such deed.

At the time of trial there were no incumbrances, liens, or judgments against the land save taxes accruing since March 1, 1903. Plaintiff has not had possession of the land since that time, and, if defendant did not take possession thereof, it is his own fault. He is, of course, entitled to the rents and profits, but not from plaintiff, unless plaintiff had or received the same, and this is distinctly negatived by the testimony.

4. RENTS AND PROFITS: recovery.

Complaint is made of the decree because judgment was rendered against defendant for the amount of the unpaid purchase price, with interest. It is argued that no interest should be allowed, for the reason that defendant was never in possession; further, that plaintiff should account for the rents and profits; and, finally, that the taxes should be paid by plaintiff. There is no merit in any of these contentions. Plaintiff did not have the possession. If defendant did not take it, it was his own fault. Plaintiff is not responsible for the rents and profits, nor was it his duty to pay taxes accruing after March 1, 1903.

5. UNPAID PURCHASE PRICE: interest.

The decree awarded by the trial court was in the alternative; that is to say, it gave defendant the option to settle according to the terms of his contract, or to pay the full purchase price, with interest. In this there was no error.

6. SPECIFIC PERFORMANCE: alternative decree.

The decree seems to be right, and it is *affirmed*.