W. N. SKINNER, Appellant, v. WM. SCHOLES, the Last Acting President, and Lillian A. Scholes, the Last Acting Secretary of the Scholes Land Company, a Corporation, of Armour, South Dakota, Now Dissolved, and Wm. Scholes and Lillian A. Scholes, Respondents.

(229 N. W. 114.)

Opinion filed February 10, 1930.

*Edward S. Johnson* and *Scott Cameron,* for appellant.

*Sullivan, Hanley, & Sullivan,* for respondents.

NUESSLE, J. This is an action to cancel an executory contract for the sale of land and for other relief. The trial court having ordered judgment in favor of the defendants, the plaintiff appeals and demands a trial de novo.

The facts material on this appeal, as we find them, are substantially as follows: The defendant William Scholes was engaged in the banking business in South Dakota. He organized a corporation, The Scholes Land Company, under the laws of that state to handle land deals. He and his wife, the defendant Lillian A. Scholes, were the sole stockholders. He was the president of the corporation and his wife the secretary. On June 1, 1916, Scholes, acting for the corporation, sold to the plaintiff a section of land situated in what is now Grant county, North Dakota. The sale was on contract. The price was $6,000, $500 to be paid in cash, the remainder at the expiration of ten years with interest at the rate of 6 per cent per annum payable annually, and the purchaser to pay all taxes levied on the land subsequent to 1916. Among other things the contract provided: ". . . The said party of the first part (the land company) hereby covenants and agrees to convey and assure to the said party of the second part (the plaintiff) in fee simple, clear of all encumbrances whatever, by good and sufficient warranty deed, the (description of the land involved). . . . First party agrees to furnish an abstract of title to said above described premises showing title in the first party free and clear of all liens and encumbrances, possession of said premises to be given to said second party upon the execution of this contract. It is mutually agreed by and between the parties hereto that the time of payment shall be the essence of this contract and that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties." The contract was executed and delivered. The cash payment of $500 was made. The abstract showing the then record title to the premises was delivered to the plaintiff and the plaintiff went into possession. Thereafter he continuously occupied and used the land until June 1, 1926. In the meantime he paid the interest as the same fell due. He paid the taxes up to 1925 in amounts totaling $1294.41. In 1918 he built fences on the land at a cost of $350. These fences remained on the land on June 1, 1926, but were somewhat in disrepair and were then of the value of $200. This land was railroad land. It later belonged to the Northwestern Improvement Company. That company contracted to sell it to one Patterson. Patterson assigned the contract and after various as-

signments it came to the Scholes Land Company, which took deed to the property. The Improvement Company in its deed reserved mineral, gas, and oil rights. The various assignments of the Patterson contract were not of record. In 1919 the Scholes Land Company deeded the property to Mrs. Scholes and also assigned the contract of sale to her. In 1920 the company having disposed of all its property voluntarily dissolved and went out of existence. No notice was given to the plaintiff of the assignment of the contract or the conveyance of the title to Mrs. Scholes, or of the dissolution of the corporation. Plaintiff first learned that the corporation had been dissolved on May 24, 1926, and at about the same time he learned that the land had been transferred to Mrs. Scholes. All payments of interest as they were made annually by the plaintiff were sent by mail addressed to the land company and were received either by Mr. or Mrs. Scholes and such payments were endorsed on the contract. Mrs. Scholes received the proceeds of the several payments made subsequent to the dissolution of the corporation. As the time approached for the final payment there was some correspondence between the plaintiff and Scholes. Plaintiff objected on account of the mineral reservations and because the assignments of the Patterson contract were not of record. Then it was that plaintiff learned that the corporation had been dissolved and that Mrs. Scholes held title to the land. He at once indicated that he would insist on a deed from the land company. On June 1, 1926, the day when the final payment fell due, plaintiff tendered Scholes a draft for the amount required to satisfy the contract and demanded a deed from the land company. Scholes told him that he would not receive that money as it was impossible to deliver a deed from the land company but made no objection to the form of the tender. Scholes also told the plaintiff that Mrs. Scholes would execute and deliver her deed in satisfaction of the contract. Plaintiff, however, refused to accept a deed from Mrs. Scholes. He also promptly gave notice of rescission of the contract and tendered possession of the property. Under these circumstances the plaintiff, claiming that the land company had voluntarily put it out of its power to perform, insists that he is entitled to rescind the contract under subdivision 2, § 5934, Comp. Laws 1913, which provides that a party may rescind a contract if through the fault of the party as to whom he

rescinds the consideration for his obligation fails in whole or in part. Proceeding under this theory, plaintiff brought this action seeking an adjudication that the contract be rescinded; that he recover the amounts paid by him under it as principal, interest, taxes, and for improvements made, together with interest thereon from the dates of payment thereof; and that he be given a lien upon the premises for the amount of such recovery. He offers to credit the value of the use and occupation of the premises during the time he occupied the same, but claims that the amount thus to be credited is much less than the amount of the payments made for principal, interest, taxes and improvements. On the other hand, defendants insist that under the terms of the contract a deed from Mrs. Scholes was sufficient and that the plaintiff must accept the same. At the time of the trial the defendants tendered a deed sufficient in form and executed by Mr. and Mrs. Scholes individually and as trustees of the dissolved corporation. At that time they had corrected the defects in the title to which plaintiff had objected in the first instance. The questions on this appeal then may be narrowed down to the propositions as to whether under the circumstances the plaintiff could properly refuse to accept the deed from Mrs. Scholes, rescind the contract, and recover his several payments made under it, less proper charges for use and occupation.

The plaintiff had complied with all the terms of the contract. He was unaware until May 24, 1926, that the land company had conveyed the property to Mrs. Scholes and that the title then stood in her name. Thereafter he did nothing which would in any way indicate a waiver of the right on his part to object to a conveyance from her. He had no notice or knowledge that the corporation had gone out of existence until that time. He did not learn that the contract had been assigned to Mrs. Scholes until after June 1st. On June 1st, the day on which he was entitled to receive a deed under the terms of the contract, he tendered a draft for the full amount required to be paid and demanded such deed. Scholes refused to accept this draft. Not because it was a draft, but because the land company had gone out of existence and he could not furnish a deed as demanded. Time was of the essence of the contract. The plaintiff having at the proper time made a tender of the contract price and there being no objection to the form in which the

tender was made, did all that he was required to do, and thus, unless the offer to give him a deed from Mrs. Scholes was an offer of compliance with the terms of the contract on the part of the defendants, they were in default. Miller v. Shelburn, 15 N. D. 182, 107 N. W. 51.

The plaintiff was entitled to insist upon the terms of the contract and to a deed in conformity therewith. The contract provided that the land company would convey title clear of all encumbrances whatever, by good and sufficient warranty deed. The fair inference is that this contemplated a deed with the usual covenants. Most certainly it contemplated a covenant against encumbrances. And this is one of the usual covenants. See Comp. Laws 1913, § 5959. The covenant against encumbrances does not run with the land. Gale v. Frazier, 4 Dak. 196, 30 N. W. 138; Comp. Laws 1913, §§ 5786–5788. So a deed from Mrs. Scholes, the grantee of the land company, would not give to the plaintiff that to which he was entitled under the contract, that is, the land company's covenants which did not run with the land, including that against encumbrances. McVeety v. Harvey Mercantile Co. 24 N. D. 245, 139 N. W. 586, Ann. Cas. 1915B, 1028; Dalton v. Callahan, 122 Me. 178, 119 Atl. 380; Maupin, Marketable Title, 3d ed. p. 49, and cases cited. See also note in 57 A.L.R. at p. 1507. The defendants urge that the plaintiff must be satisfied with a deed from the company's grantee because of the provision in the contract that "all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties." They insist that this provision clearly indicates that the parties contemplated that the contract might be assigned, either by the vendee or the vendor, and so if the vendor conveyed the land to a third person and assigned the contract to him that a deed from that vendee to the plaintiff would satisfy the contract. We do not think that this contention can be sustained. The clause above referred to and on which the defendants rely, did not enable either party to transfer the burden of personal covenants by mere assignment without the consent and agreement of their assignees. See Meyer v. Droegemueller, 165 Minn. 245, 206 N. W. 391; Midland County Sav. Bank v. T. C. Prouty Co. 158 Mich. 656, 133 Am. St. Rep. 401, 123 N. W. 549;

Lisenby v. Newton, 120 Cal. 571, 65 Am. St. Rep. 203, 52 Pac. 813; 27 R. C. L. 567; 39 Cyc. 1671–1680, and cases cited. The assignment of the contract to Mrs. Scholes contained no reference to any consent or agreement on her part to assume the obligations of her assignor. We cannot believe that the parties to the contract intended that liability on account of the personal covenants therein might be escaped by assignment. Nor do we believe that they intended to contract in advance to consent to the transfer of the obligations of the contract so as to come within the provisions of § 5782, Comp. Laws 1913, providing that "The burden of an obligation may be transferred with the consent of the party entitled to its benefit, but not otherwise, except as provided by § 5791." So even though the defendant Mrs. Scholes, the assignee of the land company and the grantee who took title to the property from the land company was ready and willing to assume the burden of the contract and deed to the plaintiff with full covenants, nevertheless this would not satisfy the contract. The plaintiff had never consented to accept her deed with covenants in lieu of a deed from the land company. The case of Shelly v. Mikkelson, 5 N. D. 22, 63 N. W. 210, relied upon by the defendants, is quite different from the instant case. There the bond for deed provided: "The condition of this obligation is such that if the said Shelly, his heirs, executors, administrators or assigns make, execute and deliver a good and sufficient warranty deed with full covenants . . . then this obligation to be null and void, otherwise to remain in full force and effect." In the instant case the Scholes Land Company, the vendor, agreed "to convey and assure to the said party of the second part in fee simple, clear of all encumbrances whatever, by good and sufficient warranty deed." There the bond was satisfied if Shelly or his assigns performed. Here the vendor agreed to perform itself.

The plaintiff being entitled to rescind the contract the next questions are as to whether he can recover, and if so, the measure of his recovery. The object sought by the judgment in such a case is to place the parties as nearly as possible in statu quo. In that behalf the general rule is that interest on the purchase money paid and the use of the land under the contract where the purchaser is in possession shall offset each

other.  See Kicks v. State Bank, 12 N. D. 576, 98 N. W. 408; Miller v. Shelburn, supra.  Here the plaintiff had used and occupied the land from June 1, 1916 to June 1, 1926.  He made an initial payment of $500.  He paid interest according to the terms of the contract up to June 1, 1925.  He paid taxes assessed against the premises up to those for the year 1925, amounting in all to $1,294.41.  He put improvements upon the land in the way of fences in 1918 and had the use and benefit of the same to the time of his rescission of the contract.  At that time these fences were of the value of about $200.  On June 1, 1926, interest was due on the unpaid purchase price in the sum of $330.  So applying the rule the plaintiff is entitled to a return of the sum of $500, the amount of his initial payment, plus $1,294.41, the amount of the taxes paid by him without interest, plus $200 the value of the improvements as of the date of the rescission, less the sum of $330 the amount of the interest due on June 1, 1926.  He accordingly is entitled on account of these various items to judgment for the sum of $1,664.41, together with interest thereon from June 1, 1926.

The remaining question is as to whether or not the plaintiff is entitled to a lien upon the premises for the amount of such judgment. We think that he is.  The plaintiff was, under the terms of his contract, entitled to a warranty deed to the premises from the Scholes Land Company.  The deed was not tendered to him pursuant to the contract, and the land company having gone out of existence a performance cannot be had.  Hence there was a failure of consideration, and hence he is entitled to a lien upon the property pursuant to § 6865, Comp. Laws 1913, which provides: "One who pays to the owner any part of the price of real property, under an agreement for the sale thereof, has a special lien upon the property, independent of possession, for such part of the amount paid as he may be entitled to recover back in case of a failure of consideration."  It is true that Mrs. Scholes is now the owner of this property.  She took title, however, with notice of the plaintiff's contract.  Though she took title in 1919 and payments have been made by plaintiff since that time, nevertheless they were made by the plaintiff without notice or knowledge on his part that the title stood in her name. They were made with her consent and she received the benefit of them. So the plaintiff is entitled to the lien as against her.  See Donovan v.

Dickson, 37 N. D. 404, 164 N. W. 27. See also Larson v. Metcalf, 45 A.L.R. 344, and note (201 Iowa, 1208, 207 N. W. 382).

The judgment of the district court is therefore reversed with directions that judgment be entered in accordance with the foregoing opinion.

BURKE, Ch.J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur.