**CORAL GABLES, Inc., v. PAYNE.**
No. 4249.

Circuit Court of Appeals, Fourth Circuit.
Feb. 2, 1938.

J. Q. Marshall, of Columbia, S. C., for appellant.

C. T. Graydon, of Columbia, S. C. (Claud N. Sapp, of Columbia, S. C., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and COLEMAN, District Judge.

SOPER, Circuit Judge.

Three questions are presented upon this appeal from a decree of the District Court denying the assignee of a vendor specific performance by the vendee of a contract

for the sale of real estate. These questions are: (1) Whether the deed of the assignee of the vendor meets the vendor's obligation; (2) whether certain remedies provided in the contract for the benefit of the vendor exclude specific performance of the contract; (3) whether there was an abuse of discretion by the court below in the denial of specific performance.

Dr. Paul E. Payne, the appellee, visited Coral Gables, Florida, in June, 1925 at the time of the so-called "Florida Boom" and, becoming interested in the purchase of real estate, was shown certain lots which he thereafter agreed to purchase from the Coral Gables Corporation. According to his testimony a plat of Coral Gables was shown to him upon which were indicated certain improvements, including canals, yacht basins, and a deep channel for large boats; and he was told that the Coral Gables Corporation had the means and would carry on the development, whereupon he was induced to enter into a contract of purchase. None of these improvements were mentioned in the contract, but the Coral Gables Corporation did agree therein to make certain other improvements in the immediate vicinity of the lots purchased.

The written contract, executed on June 9, 1925, provided that in case certain payments were duly made by Payne, the corporation would convey to him certain lots of ground "by good and sufficient *warranty deed,* free of all incumbrances." The consideration was $9,300, of which $2,325 was paid upon the execution of the contract and the balance was payable in twelve quarterly payments of $581.25 each. Many restrictive covenants as to the use of the property were set out in the agreement. The vendor covenanted to pave the streets, construct sidewalks, and install water mains and electric feed wires. Three specific remedies were given the vendor in case of a failure of performance on the part of the vendee. It was first stipulated that the entire amount payable under the contract would become due and recoverable at law upon the failure of the vendee to make any of the payments or perform any of his covenants. Secondly, it was provided in the case of such a default that the contract should become null and void at the option of the vendor, and in the event of the exercise of such option, the vendor would have the right to re-enter, take possession, resell and declare a forfeiture of the payments previously made (to an extent limited in the contract) as liquidated damages. Thirdly, the contract upon default might be foreclosed in the manner customary for foreclosure of property in the county where the lots were located.

Several quarterly payments were made under the contract, but later the vendee became in default, and on April 1, 1927, the parties entered into an extension agreement whereby a greater time was allowed for the making of the payments and the amount of the individual payments was reduced without, however, decreasing the principal amount due or in any other way altering the original contract. Payments were continued under this altered agreement until February, 1928. The note given by Payne to the corporation was then apparently still in the hands of the corporation as all of the payments are endorsed thereon. Later the corporation became involved in financial difficulties and assigned certain contracts for deeds and certain notes given in pursuance thereof to one M. I. Schultz as trustee. The exact date of this assignment does not clearly appear in the record. Thereafter the Coral Gables Corporation went into receivership and liquidation. A new company, Coral Gables, Incorporated, the present appellant, was formed on March 9, 1929, and on the same day the property now in question was transferred to it by warranty deed from the old corporation. On March 26, 1929, certain contracts and notes, including those herein involved, were assigned to the new corporation by M. I. Schultz, trustee. This action was instituted on May 27, 1932, to require Payne to pay the appellant the balance then due under the terms of the contract, $4,141.45 with interest, and to require him to accept a general warranty deed from the new company.

All of the witnesses on behalf of the appellant testified that the improvements which the vendor had expressly covenanted to make had been completed. Neither the appellee, nor the only witness who testified on his behalf, had been in the immediate vicinity of the lots since 1927, and hence their testimony in regard to the improvements thereon was entitled to little weight. It appeared that the present value of the lots is not in excess of $500.

It is first necessary to decide whether the appellee can be compelled to accept the deed of Coral Gables, Incorporated, in lieu of the deed of the Coral Gables Cor-

poration, the original vendor. On behalf of the appellee it is contended that a vendee is not required to accept the deed of an assignee of the vendor because in contracts for the purchase and sale of real estate, the integrity and solvency of the vendor is often a material factor. More specifically, the question is whether the vendee would receive in the deed tendered by the new corporation the benefit of all of the covenants which the old corporation had bound itself to give. The general rule is that if a contract for the sale of real estate neither expressly nor by implication calls for any covenants by the vendor, the vendee may be required to accept a deed from the assignee of the vendor. Noyes v. Brown, 142 Minn. 211, 171 N.W. 803; O'Keefe v. Dyer, 20 Mont. 477, 52 P. 196; Meyers v. Markham, 90 Minn. 230, 96 N.W. 335, 787. Again, if the contract calls only for those covenants which run with the land, and the vendor has transferred the land to an assignee by a warranty deed containing such covenants, the vendee may be required to accept the deed of the assignee because thereby he will receive the benefit of the vendor's covenants. Le Ray de Chaumont v. Forsythe, 2 Pen. & W., Pa., 507; Coral Gables v. Jones, 323 Pa. 425, 187 A. 434; Big Bend Land Co. v. Hutchings, 71 Wash. 345, 128 P. 652; Rauch v. Zander, 138 Wash. 610, 245 P. 17; · Herrick Improv. Co. v. Kelly, 65 Wash. 16, 117 P. 705; Gaven v. Hagen, 15 Cal. 208. If, on the other hand, the vendor has agreed to give personal covenants which do not run with the land, the vendee is not compelled to accept a deed from the assignee since it does not comply with the vendor's contract. Skinner v. Scholes, 59 N.D. 181, 229 N.W. 114; Weiser v. Ekre, N.D., 271 N.W. 147, 109 A.L.R. 175, and note.

It becomes necessary, therefore, to determine what form of deed was required under the contract in the present instance. It specified a "good and sufficient *warranty deed,* free of all incumbrances," and this would seem to require a general warranty deed with all of the usual common-law covenants. These are the covenants for seisin: That the grantor has good right to convey; for quiet enjoyment; against incumbrances; and that the grantor will warrant and defend the title. 7 R.C.L., Covenants, § 40. Sections 5661 and 5662 of the Comp.Gen.Laws Florida of 1927 indicate that it is customary to include the common law covenants in a warranty deed in Florida. Section 5661 sets out a form of warranty deed and section 5662 provides that "a deed executed in the foregoing form shall be held to be a warranty deed with full common law covenants, and shall just as effectively bind the grantor, and his heirs, as if said covenants were specifically set out therein."

No Florida case considering the point here presented is cited. A provision substantially identical with that used in the present contract was construed to require a deed with the usual covenants in Skinner v. Scholes, 59 N.D. 181, 229 N.W. 114. The term "warranty deed" was held to require a deed with the usual covenants in Winn v. Taylor, 98 Or. 556, 190 P. 342, 194 P. 857, and Neff v. Rubin, 161 Wis. 511, 154 N.W. 976. In Seaboard Air Line Ry. Co. v. Jones, 120 S.C. 354, 113 S.E. 142, 143, 144, a contract for a "good and sufficient deed" was interpreted to mean a deed with the usual covenants. See, also, Ely v. Joslin, 111 Kan. 638, 208 P. 628; Johnson v. Ford, 147 Tenn. 63, 245 S.W. 531; Sargent v. Realty Traders, 82 N.J.Eq. 331, 88 A. 1043, Ann.Cas.1915C, 488; McVeety v. Harvey Merc. Co., 24 N.D. 245, 139 N.W. 586, Ann.Cas.1915B, 1028; 66 C.J. 981; 27 R.C.L. 526, 529; Note, Ann.Cas.1915C, 490. Cf. Kirkendall v. Mitchell, Fed. Cas.No.7,841.

Regardless of these authorities, the inclusion in the present contract of the words "free of all incumbrances" seems to require a covenant against incumbrances. Bryant v. Wilson and Hunting, 71 Md. 440, 18 A. 916. The preponderance of authority in this country is that a covenant against incumbrances is merely personal and does not run with the land. Simon v. Williams, 140 Miss. 854, 105 So. 487, 44 A.L.R. 402; Tuskegee Land, etc., Co. v. Birmingham Realty Co., 161 Ala. 542, 49 So. 378, 23 L.R.A.,N.S., 992; Lockhart v. Parker, 189 N.C. 138, 126 S.E. 313; Knight v. Cox, 31 N.M. 325, 245 P. 250, 45 A.L.R. 510; Levine v. Hull, 135 Md. 444, 109 A. 141; Pearson v. Richards, 106 Or. 78, 211 P. 167. See, also, 7 R.C.L., Covenants, § 49, and 15 C.J. p. 1247. The duty imposed thereby requires personal performance and cannot be delegated. Williston on Contracts, Rev. Ed., §§ 411, 411A; Skinner v. Scholes, 59 N.D. 181, 229 N.W. 114.

Hence it would follow in the absence of some countervailing reason that the vendee should not be compelled to accept the tendered deed. Such a reason in our opinion is found in this case. The purpose

of the rule manifestly is that the vendee should not be compelled to accept, in lieu of the promised obligation of the vendor, the obligation of the assignee which may be, or seem to the vendee to be, less desirable; but when, as in the pending case, the covenant of the original vendor would be entirely valueless and contribute nothing to the security of the vendee or the validity of his title, he should not be allowed merely on account of its absence to escape his own obligation. He will receive under the assignee's deed the benefit, whatever it may be worth, of all the covenants of the vendor which run with the land; and he does not suggest that there is in fact any incumbrance upon the land or any defect in the title whatsoever. Under such circumstances, this defense to the suit should not be sustained. No case has been found which involves the specific point, but in certain instances a vendee has been compelled to accept the deed from the heirs of the vendor. Prichard v. Mulhall, 140 Iowa 1, 118 N.W. 43; Winn v. Strong, 196 Iowa 498, 194 N.W. 50; Barnett v. Morrison, 2 Litt., Ky., 68; Gates v. McWilliams' Heirs, 6 Dana, Ky., 42; Barickman v. Kuykendall, 6 Blackf., Ind., 21; Wollenberg v. Rose, 41 Or. 314, 68 P. 804; and in the following cases for various reasons the vendee was compelled to accept the deed of the assignee. Kimball v. Goodburn, 32 Mich. 10; Bateman v. Johnson, 10 Wis. 1; Greffet v. Willman, 114 Mo. 106, 21 S.W. 459.

█ Coming to the second ground of defense we find some authority for the view that such remedies, as are set out in the contract, are exclusive and preclude specific performance. Coral Gables v. Patterson, 231 Ala. 649, 166 So. 40; Id., 233 Ala. 602, 173 So. 4. The solution of the question depends upon whether or not it was the intention of the parties, as manifested by the language of the contract, that the remedies specified therein should be the only ones available to the assignor in case of the default of the vendee. If the intention is that the contract is to become void at the option of either party upon the payment of the penalty for default, it may not be specifically enforced. The contract under consideration provides that in case the vendee fails to make any of the payments or perform any of his covenants, the amount of the purchase price shall become due and payable forthwith and recoverable at law; or in case of such default that the contract shall become null and void *at the option of the vendor* with the right on its part to re-enter and resell; or the contract may be foreclosed in equity in the manner provided for foreclosure of mortgages. Such provisions have been quite uniformly held merely to furnish additional security for the performance of the main obligation. Wandell v. Johnson, 71 Mont. 73, 227 P. 58; Mackie v. Schoenstadt, 307 Ill. 398, 138 N.E. 686; Berry v. Humphreys, 76 W.Va. 668, 86 S.E. 568; Jolly v. Martin, 120 S.C. 317, 113 S.E. 128; McNinch v. Rogers, 116 Kan. 686, 229 P. 78; George E. Wood Lumber Co. v. Morris, 225 Ala. 281, 142 So. 508; First Nat. Bank v. Glens Falls Ins. Co., 4 Cir., 27 F.2d 64; Hamilton Co. v. Battson, 99 Mont. 583, 44 P.2d 1064, 101 A.L.R. 520; Annotation, 32 A.L.R. 584; 98 A.L.R. 887.

█ Lastly it is contended that the court should exercise the sound discretion with which it is clothed in suits for specific performance, Haffner v. Dobrinski, 215 U.S. 446, 30 S.Ct. 172, 54 L.Ed. 277; Annotation, 65 A.L.R. 7; 25 R.C.L. 216, and deny the relief prayed, in view of the disparity between the agreed purchase price and the present value of the land. This discretion, however, is to be exercised according to the settled principles of equity, "not arbitrarily and capriciously and always with reference to the facts of the particular case." Mere decline in price of the subject of a sale and the consequent disappointment of a buyer engaged in a speculative venture do not justify a refusal of the remedy. In the instant case there is no evidence that the agreed price did not accord with prevailing conditions or that the contract was inequitable, oppressive, or unconscionable at the time of its execution; or indeed that the purchaser could not thereafter have resold the land at the same or a better price, had he not preferred to hold it.

The decree of the District Court is reversed and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.