62 209
a64 793

## MARTHA SLATER SMITH

### *v.*

## WILLIAM BAXTER.

[Filed July 25th, 1901.]

The effect of a declaration of trust in the case stated defined, and the meaning of the word "assigns" in that instrument construed.

*Mr. John Whitehead,* for the complainant.

*Mr. Thomas W. Randall,* for the defendant.

STEVENS, V. C.

The question arises upon the language of a declaration of trust made by Harriet Slater in favor of the complainant. Harriet and complainant were sisters. Their father's estate, real and personal, was being divided. In the course of the division it was agreed that Martha should convey her undivided half interest in

the homestead to Harriet, who already had title to the other half, and that Harriet should execute a declaration of trust to Martha. This was done. The controversy is over the meaning of the following clause in the trust deed, which, after providing that Harriet might use, occupy and enjoy the homestead for life, and might, if she saw fit, rent the same, and that, if she survived Martha, she might have the fee-simple free from trust, proceeds as follows:

"And also upon the further trust and for the further use and purpose, that in case the said Martha Slater should survive me, then that my heirs or assigns shall sell and convey the whole of the said lot of land and premises to the said Martha Slater, her heirs and assigns, in an estate of fee-simple."

Harriet died and devised all her property to her husband, the defendant. The brothers of Martha executed a conveyance of the homestead to Martha, and she then brought ejectment against the devisee. She was defeated, on the ground that the devisee had the *legal* title. No doubt, under the operation of the rule stated in *Perry Trusts* § *336*, a general devise of real estate will pass an estate vested in the testator as trustee, unless a contrary intention can be collected from the will or from the purposes to which the devised lands are subjected.

The question now is whether the devisee thus taking the legal title will be compelled to convey it to complainant. The declaration of trust is inaptly worded, but I think that it contains enough to justify the conclusion, in accordance with the general rule for construing trusts stated in *Janes* v. *Falk, 5 Dick. Ch. Rep. 470*, that it was Harriet's intention that the survivor of the two sisters should take the fee beneficially. The word "assigns," used in the paragraph quoted, is broad enough to include "devisee." In *Jac. Dict.* it is defined as follows:

"Those who are assigned, deputed or appointed by the act of the party or the operation of law, to do any act or enjoy any benefit on their own account or risk. * * * Under the word 'assigns' shall be included the assignee of an assignee *in perpetuum*, the heir of an assignee or the assignee of an heir, so the assignee of an assignee's executor *and a devisee.*"

Looking at all parts of this declaration, it seems to me that

the word "assigns" was intended to have the broad meaning ascribed to it by this definition.

First, it is declared that, although the deed from Martha to Harriet of her undivided half was, in its terms, absolute and unconditional, yet it was made "upon the trusts" in the declaration contained. It was, therefore, Harriet's intention to create a *trust* in favor of Martha.

Secondly, it is expressly provided that, outliving Martha, Harriet should hold only for life; and so carefully is the interest restricted that it is expressly declared that no lease shall exceed the term of Harriet's life.

Thirdly, it is stipulated that Harriet might sell, but that if she did, she should purchase other real estate of equal value, which should be held upon the same trusts. This stipulation is very significant.

It shows that, by the word "assigns," testator did not mean assignees for value, because they take free from the trust, which is thereafter imposed upon the purchase-money and the other real estate purchased therewith. There are left, therefore, only *voluntary* assignees, and it is hard to believe that Harriet had in mind only such assignees of this class as she might constitute in her lifetime and not such as she might constitute by will. The very frame of the clause indicates assignees of this latter class. She is making provision for the event of Harriet surviving her, and while contemplating this event she uses the word "assigns" in connection with heirs, as to whom the maxim is *nemo est haeres viventis.*

In *Titley* v. *Wolstenholme,* 7 *Beav. 425,* R. T. devised his real and personal estate to his wife and two sons, "their heirs, executors, administrators and *assigns,*" upon trust. The surviving trustee devised the trust estate to A, B and C, upon the trusts of the first will. Lord Langdale said: "We have in this will expressions which clearly show that the testator intended the trusts to be performed by the 'assigns' of the surviving trustee, and in construing the will we must, if practicable, ascribe a rational and legal effect to every word which it contains. We cannot, consistently with the rule of this court, consider the word 'assigns' as meaning the persons who may be made such by the

spontaneous act of the surviving trustee, to take effect during his life, but there seems nothing to prevent our considering it as meaning the persons who may be made such by devise and bequest, and if we do not consider the word 'assigns' as meaning such persons, it would, in this will, have no meaning or effect whatever."

It is hard to believe that the parties intended that Harriet should defeat Martha's interest by the simple expedient of making a will; a will which, on the construction contended for, would relieve even heirs, if they took in the character of devisees; and this is the harder to believe, because it appears, from the deed itself and another deed executed contemporaneously, that the trust was upon valuable consideration.

Again, the language is mandatory—"my heirs or assigns *shall* sell and convey"—indicating that she contemplated a conveyance at her death in all events. By giving to the word "assigns" its broad meaning, it is easy to carry the direction into effect.

It may be argued that the use of the word "sell" implies a conveyance for valuable consideration, and that as no consideration is named, the declaration is imperfect; but I think that the consideration in the contemplation of the parties was the transfer by Martha to Harriet of her undivided half interest. This is fairly inferable from the previous clause, which recites that, although the deed from Martha to Harriet was, in its terms, "absolute and unconditional," yet it was, in fact, made upon the conditions and for the trusts thereinafter mentioned.

It was argued that the paper was testamentary in its character, and therefore void, because not made with the proper statutory formalities. But there is nothing ambulatory about it. It gives, for valuable consideration, an irrevocable interest, contingent only on the decease of Harriet before Martha.