P. F. MALLY, Executor of the Estate of Catherine Mally, Deceased, AND P. F. MALLY, Appellants, v. EMMA MALLY AND J. E. STOUT, Sheriff of Polk County, Iowa.

Estate in Expectancy: ASSIGNMENT OF: EVIDENCE. A claimed verbal assignment of the contingent interest of an heir in a parent's estate, based simply on a conversation in which the heir stated that if the assignee was compelled to pay a certain judgment against him he should have whatever interest he might possess as an heir in his ancestor's estate, is not sup-. ported by evidence sufficient to show a present assignment.

*Appeal from Polk District Court.*—HON. A. H. McVEY, Judge.

FRIDAY, OCTOBER 9, 1903.

CATHERINE E. Mally died in September, 1898, seised of certain lands, which she disposed of in the second paragraph of her last will as follows: "I hereby give, bequeath and devise and will to my son P. F. Mally all of my real estate wherever situated, of which I may die seised, possessed, or entitled to, subject however to the following conditions, to wit: My son P. F. Mally to be vested with the fee simple title to said land and to own the same in his own right in absolute fee simple title but the said P. F. Mally shall receive the same subject by him to my son William E. Mally the sum of fifteen hundred dollars ($15,00.00), and to my son Fredrick Mally the sum of six hundred dollars ($600.00) said sums to be paid within six months from the date from the probate of my last will and testament, and in the event that my said son P. F. Mally should die before I do, said real estate shall then go to his legal representatives, subject to the payment of said sum or sums hereinbefore mentioned, and they shall have the right to pay them, the same as my son P. F. Mally would have had." Prior to her death, January 8, 1897, Emma Mally had obtained a judgment against the legatee William E. Mally for the sum of $500 and costs, and after testator's death caused execution to issue against the devisee and P. F. Mally, to be garnished as a supposed debtor of the judgment defendant, and also said execution to be levied upon the said land, and the same to be advertised for sale. The plaintiff alleges that all of the judgment debtor's interest in the testator's estate was orally assigned to him long before the rendition of said judgment in satisfaction of a valid indebtedness owing to him by plaintiff, and for this reason he had no interest in the real estate subject to levy. The sale was temporarily enjoined. The answer put in issue the alleged assignment. Decree was entered finding that there had been no assignment, and the judgment defendant had no interest in the land subject to

execution, and the temporary writ of injunction was dissolved, and the petition dismissed.    The plaintiff appeals.
—*Affirmed.*

*Brennen & Brennen* for appellant.

*Ryan, Ryan & Ryan* for appellees.

LADD, J.—Under the will the plaintiff took title to the land subject to the bequest of $1,500 to W. E. Mally. Immediately after testator's death Emma Mally caused execution to be issued on a judgment previously obtained by her against W. E. Mally, and levied on this land. The plaintiff sought to enjoin the sale on the ground that in the lifetime of the testator W. E. Mally had orally assigned to him all of his possible or expectant interest in the testator's estate in satisfaction of a debt due him.    Appellant insists that under the evidence the court should have so held.    This is the only point raised by him; and for this reason we do not pass upon the more difficult question as to whether the legacy under the will is a mere lien on the real estate or an interest in the land subject to execution. The current of authority is to the effect that an assignment of a naked possibility or expectancy of an heir apparent to an estate, if in good faith and for an adequate consideration, will be enforced in a court of equity after the death of the ancestor.    See *Jones v. Jones*, 46 Iowa, 466, and decisions collected in 4 Cy. 15; exhaustive notes to *McCall v. Hampton*, in 33 L. R. A. 266, and to 56 Am. St. Rep. 339—a recent case to the contrary.    As to whether it must also appear that the assignment was made with the ancestor's knowledge and acquiescence, the authorities are in conflict.    In the early case of *Boynton v. Hubbard*, 7 Mass. 112, this was held to be essential, and that decision has been followed in *McClure v. Raben*, 125 Ind. 139 (25 N. E. Rep. 179, 9 L. R. A. 477), and 133 Ind. 507, 33 N. E. Rep. 275, 36 Am. St. Rep. 558; to which some support

is given by *Alves v. Schlesinger*, 81 Ky. 290.   The reasons
for the rule are tersely summarized in the first opinion in
*McClure v. Raben*: "We regard such contracts and con-
veyances against public policy.   The grantor at the time
has no property or interest in the property of his father or
ancestor which he can sell or convey, and none which the
grantee can purchase.   It is a mere gambling contract.
It is wagering that the son or heir will survive the father
or ancestor, and that the latter will not dispose of the
property, and will die intestate, whereby the grantor will,
some time in the future, inherit an interest which he can
then convey.   It operates as a fraud upon the ancestor,
and diverts his bounty from a kin to a stranger.   It en-
courages extravagance, prodigality, and vice on behalf of
the heir, and in some instances might create an anxiety
on the part of an avaricious or vicious purchaser for the
death of the ancestor."   On the other hand, the opposite
view was taken in *Mastin v. Marlow*, 65 N. C. 695; and
in an opinion exhibiting much research the Supreme Court
of Texas, in *Hale v. Hollon*, 90 Tex. 427 (39 S. W. Rep.
287, 36 L. R. A. 75, 59 Am. St. Rep. 819), shows that want
of the notice to and acquiescence by the ancestor has
never been regarded by the English decisions as alone con-
trolling.   In that case, and also in *Fuller v. Parmenter*,
72 Vt. 362 (47 Atl. Rep. 1079), notice was held not
to be essential where the ancestor was insane at the
time of making the assignment.   The question is one
of much difficulty, and, while raised by the appellee,
is not discussed in the brief of appellant.   In these cir-
cumstances we deem it preferable to postpone decision of
the point for full argument, as the case may be disposed
of on the facts.

The evidence fails to show a present assignment.
True, plaintiff testified as a conclusion that his brother W.
E. Mally "made a verbal assignment to me of any interest
he might have in his mother's estate."   But the language

from which this conclusion was drawn was detailed by two other witnesses. Trent testified he heard "William say to Paul that he had no property, but that whatever interest would come to him from his mother's estate should be Paul's if he had to pay the sixteen hundred dollars. He stated that whatever interest he had in the estate of his mother should be Paul's." W. E. Mally testified: "I told him in the presence of Mr. Trent, 'I cannot pay you a penny, because I have not got a cent to pay you with, but, if mother ever leaves me anything, you shall have it, and I won't have anything to do with it in case you have to pay the judgment.' * * * I made the statement to Paul that he should have what I might have in my mother's estate in the summer of 1892." From this it is manifest that William had no thought of then transferring his expectancy in his mother's estate. All that was said amounted to no more than a promise to turn over whatever his mother might leave him in event plaintiff should be compelled to pay the judgment. This promise he has never carried out, and for this reason no transfer was ever made to plaintiff.—AFFIRMED.