### ERICHSEN *v.* TAPERT.

1. Covenants—Building Restrictions—Contracts.

    Where the owners of a portion of the lots along a public street entered into a mutual agreement restricting the location and kind of buildings to be erected on the lots, understanding that not all the owners of such property could be induced to sign the agreement, which described the parties as the owners of one or more lots numbered from 25 to 74 inclusive, the contract bound those who signed it, no intention being declared by the terms of the agreement that it should not be binding until all the lot owners executed the contract.

2. Same—Consideration.

    The mutual agreements of the signers to conform to the restrictions was sufficient consideration to support the contract.

3. SAME—ASSIGNS.

The word "assigns," used in such contract, includes those who take either immediately or remotely from or under the assignor, whether by conveyance, devise, descent, or act of law.

4. SAME—DEEDS—INCUMBRANCES.

A grantee of one of the lots, the owner of which executed the contract, was bound by the restriction that, under the terms of the writing, the signers agreed upon "for our and each of our heirs, executors, administrators and assigns."

5. SAME.

The restriction could be created by a separate instrument that was not a deed of conveyance.

6. SAME—WAIVER—BREACH.

That the complainant's premises contained a barn, erected after the execution of the agreement, notwithstanding the covenant not to erect any building except a dwelling house on the premises, did not operate to waive the restriction.

7. SAME.

Complainants, as owners of the adjacent lot and a lot next thereto, were entitled to an injunction to prevent the erection of a flat or row of stores on the lot owned by defendant.

MCALVAY and OSTRANDER, JJ., dissenting.

Appeal from Wayne; Murfin, J. Submitted April 11, 1912. (Docket No. 138.) Decided November 8, 1912.

Bill by Amelia Erichsen and others against Robert T. Tapert and others to enjoin the breach of certain building restrictions. From a decree granting a part of the relief prayed, both parties appeal. Modified and affirmed.

*E. S. Clarkson,* for complainants.

*A. G. Pitts,* for defendants.

The bill in this case is filed to enjoin a threatened violation of certain building restrictions claimed by complainants to cover the premises involved. The lot in question is No. 49, lying at the southwest corner of Chandler and Oakland avenues in the city of Detroit. A single family

dwelling house now occupies the front portion of said lot facing Chandler avenue. The present owners desire to utilize the rear portion of the lot by building stores thereon facing Oakland avenue. Complainants insist that no structure can be erected upon said lot except a single dwelling house. The deed conveying this lot to the first owner after subdivision contained the following restriction:

"It is further expressly understood that the said above premises are subject to the building restriction now existing on said subdivision, and that said party of the second part assumes all obligations in conformity with said building restriction."

In October, 1904, an attempt was made by certain of the lot owners on said street to make the restrictions covering lots numbered from 25 to 74 more certain. To that end, the following agreement was executed by the owners of 26 of the 50 lots:

"Know all men by these presents that we and each of us being the owners of one or more lots in the Chandler avenue subdivision of park lot five (5) of the subdivision of section fifty-seven (57), ten thousand acre tract, Hamtramck, Wayne county, Michigan, described as lots fifty (50) to seventy-four (74), both inclusive, situate on the north side of said Chandler avenue, and also lots numbered from twenty-five (25), to forty-nine (49), both inclusive, situate on the south side of Chandler avenue, in consideration of the mutual covenants herein contained, do hereby agree to and with each other, and for our and each of our heirs, executors, administrators and assigns, as follows: That, for the purpose of making and maintaining said Chandler avenue as a desirable residence street for private families, we do hereby agree for the consideration hereinbefore mentioned that we nor either of us will erect or cause to be erected any other than a single dwelling house on each lot planned and designed to be occupied as a dwelling for a single family; that we will not build such dwelling house nearer than twenty (20) feet from the Chandler avenue street line, said twenty feet (20) feet not to include the porch of such dwelling house, nor nearer than five (5) feet from the side line of our said lots, so that a distance

of ten (10) feet between the buildings shall be maintained on said Chandler avenue; that said buildings shall be built of either brick, stone or frame, and shall cost at least the sum of twenty-five hundred dollars ($2,500).

"It is also agreed between the parties hereto that 'Exhibit A,' hereto attached and made a part of this restrictive agreement, shows the number of the lot in said addition that each of the persons executing this agreement owns, and that said 'Exhibit A' shall have the same force and effect for the purposes of this agreement as if the same were written into the body of this agreement.

"In witness whereof we have hereunto set our hands and seals this 26th day of October, A. D. 1904."

This contract was executed by Fred Vogt, who was at that time the owner of lot No. 49. It was also executed by the owner of lot No. 47, lying next west of 49, and by the owner of lot No. 45, lying next west of 47. The agreement was duly acknowledged and placed of record. The question of the character of the general restriction covering this street was considered by this court in *Tillotson* v. *Gregory*, 151 Mich. 128 (114 N. W. 1025). A reference to that opinion will aid to a correct understanding of the situation. The court below enjoined the defendants from proceeding with the erection of the stores under the authority of *Tillotson* v. *Gregory*, but declined to construe the contract relied upon by complainants or to determine its effect upon the matter in controversy. The decree did not enjoin the erection of a structure upon the premises to be used for residence purposes, but provided—

"That this decree shall be without prejudice to complainants' right to take such further action as they may desire in case of a threatened or attempted violation of the agreement of October 26, 1904."

From the decree entered, both parties appeal.

Brooke, J. (*after stating the facts*). The bill seems to have been filed solely in reliance upon the contract, and the answer meets the averments of the bill. The prayer for relief is that defendants be enjoined from erecting or causing to be erected upon said lot any building or

buildings other than a barn or other outbuildings appurtenant to a single dwelling house for said lot, and, that they be perpetually enjoined from using any dwelling thereon for any other than dwelling purposes for a single family. It is obvious that the decree as entered affords no protection to complainants if, as they aver, defendants should conclude to build in place of the stores a flat building for residence purposes only, upon the rear portion of the lot in question. In such event, complainants would be compelled to file another bill to determine whether they are entitled to the relief sought in this proceeding. We think the meaning and effect of the agreement was fairly in issue in the court below, and that a determination of that issue should have been there made. In holding the defendants precluded from erecting structures for business purposes upon said lot, the court was clearly right, under our former decision. That decision did not, however, rest upon the agreement here in question. If it was in existence at the time of the trial of *Tillotson* v. *Gregory* in the lower court, it was not produced.

To fully define the rights of the parties, it is necessary to pass upon the agreement. Defendants contend that the agreement by its terms was not to go into effect until executed by the owners of all of the 50 lots, and that, as only a bare majority (26) signed, the contract never became effective or binding on those who did sign. A careful examination of the contract convinces us that it will not support this construction. The parties are described as—

"Owners of one or more lots in the Chandler Ave. subdivision * * * described as lots 50 to 74 both inclusive, situate on the north side of said Chandler Ave. and also lots numbered from 25 to 49 both inclusive, situate on the south side of Chandler Ave."

Nowhere in the contract does it appear that the owners of all of the lots described (numbered from 25 to 74) must sign the contract before it shall become operative or binding upon those who did sign. Moreover, the testimony

in the case clearly shows that, when the contract was circulated among the lot owners, those who signed were advised that it was not thought possible to secure the signatures of all those who owned lots in the specified area.

We think the mutual agreement to observe the restriction was an adequate consideration passing from each signer to the other signers, and likewise that it was valuable, clearly not so valuable as if all had signed, yet having a tendency to raise and maintain the character of Chandler avenue as a residence street.

It is next contended by defendants that the agreement constitutes a purely personal covenant, binding upon nobody but those who signed, if binding upon them. The contract reads:

"In consideration of the mutual covenants herein contained (we) do hereby agree to and with each other, and for our and each of our heirs, executors, administrators and assigns, as follows."

The word "assigns" comprehends all those who take either immediately or remotely from or under the assignor, whether by conveyance, devise, descent or act of law. 1 Words & Phrases, p. 577, and cases cited. There is no doubt that these defendants, who hold their title from Vogt, who signed the contract, come within the legal definition of the word. The expressed purpose of the contract, and the fact that it was so executed as to entitle it to record, clearly demonstrates that it was intended to be binding not alone upon the signers but upon all their successors in title as well. That the remedy may be had by and against the grantees of the respective parties, is authoritatively settled. *Watrous* v. *Allen*, 57 Mich. 362 (24 N. W. 104, 58 Am. Rep. 363); *Whitney* v. *Railway Co.*, 11 Gray (Mass.), 359 (71 Am. Dec. 715); *De Gray* v. *Club House Co.*, 50 N. J. Eq. 329 (24 Atl. 388); *Atlantic Dock Co.* v. *Leavitt*, 54 N. Y. 35 (13 Am. Rep. 556); *Brouwer* v. *Jones*, 23 Barb. (N. Y.) 153; *Hubbell* v. *Warren*, 8 Allen (Mass.), 173. See, also, 5 Am. & Eng. Enc. Law (2d Ed.), p. 11 *et seq.*

The fact that the restriction is created in an instrument independent of the deed conveying title is of no consequence, as long as there is a valuable consideration moving to and from the signers.

It is further urged that the restriction has been waived by the complainants as to lot 49. It is shown that upon the rear end of said lot a barn some 25 by 27 feet was erected without protest, after the contract was executed. We are not called upon here to determine what outbuildings are reasonable and necessarily appurtenant to a dwelling house for a single family. The erection of the structure contemplated by defendants, whether a flat building or stores, cannot be justified upon the ground that it is a necessary appurtenance to a single dwelling. The fact that it may be less obnoxious than the barn has no bearing upon the question.

The claim is made that to enforce the restriction as to the rear portion of lot 49 would be of no advantage to complainants, while it would cause serious loss to the defendants. We do not think it can be said that the erection of such a structure would not be injurious to lots 45 and 47, owners of both of which signed the contract.

The view presented by the rear end of a row of stores or of a flat building is, we believe, considered neither attractive nor artistic. This building would abut upon the easterly line of lot 47 for nearly half its length, and would be but 50 feet distant from lot 45.

The decree of the court below will be so modified as to enjoin defendants from erecting any structure upon lot 49, except such as are permitted by the restrictive covenants contained in the agreement. Complainants will recover costs of this appeal.

MOORE, C. J., and STEERE and STONE, JJ., concurred with BROOKE, J.

OSTRANDER, J. (*dissenting*). I am unable to agree with my Brother BROOKE. As he states, the original

deed to lot 49 of the subdivision in question contained the restriction:

"It is further expressly understood that the said above premises are subject to the building restriction now existing on said subdivision, and that the said party of the second part assumes all obligations in conformity with said building restriction."

In *Tillotson* v. *Gregory*, 151 Mich. 128 (114 N. W. 1025), the subject of the building restriction imposed upon lots in this subdivision was considered. It was said:

"A careful reading of the tabulation made of the conditions in the deeds will not disclose a general, uniform, and certain plan of improvement, except that these lots were to be used for residence purposes, as distinguished from business pusposes, and the building line was to be 20 feet from the street line, and the houses were to cost not less than $2,500 and $4,000, according to location."

This ruling supports the injunction against erecting stores upon lot 49, which affords complainants relief from the injury immediately threatened.

However, I agree that the force and effect of the instrument made in October, 1904, by some of the lot owners, is involved and ought to be determined, and upon that point am of opinion that the covenant contained in the instrument is not binding upon the present owner of lot 49. In the first place, the instrument intended to apply to 50 lots was executed by the owners of but 26 lots. In and of itself, therefore, it would not, and could not, accomplish the purpose therein stated, which was—

"That for the purpose of making and maintaining said Chandler avenue as a desirable residence street for private families, we do hereby agree, for the consideration hereinbefore mentioned, that we nor either of us will erect or cause to be erected any other than a single dwelling house on each lot planned and designed to be occupied as a dwelling for a single family; that we will not build such dwelling house nearer than twenty (20) feet from the Chandler avenue street line, said twenty (20) feet not to include the porch of such dwelling house, nor nearer than

five (5) feet from the side line of our said lots, so that a distance of ten (10) feet between the buildings shall be maintained on said Chandler avenue; that said buildings shall be built of either brick, stone or frame, and shall cost at least the sum of twenty-five hundred dollars ($2,500)."

In fact, the record discloses that Chandler avenue is not a street of single dwellings, and not one on which the dwellings erected are uniformly distant from street and side lines. In the second place, the instrument creates no easement upon lots, and is not binding upon the assigns of those who executed it. It contains a covenant, which is simply a contract, and is purely personal to those executing the instrument, relating only to their own acts. Easements —incumbrances on land—must be created by apt words, and a perpetual easement is not to be inferred from language clearly consistent with a mere personal undertaking.

" In construing the covenant, it is to be observed that the grantor, although speaking for himself and his successors, to the grantee and his successors, confined the restriction to himself alone, by agreeing that he, the grantor, would neither erect nor cause to be erected any building that should be regarded as a nuisance. According to the literal, and hence natural, interpretation of this language, the parties meant that the grantor should not personally do or cause to be done any of the inhibited acts. No doubt could arise as to the correctness of this construction, if the parties had not agreed in behalf of themselves and their assigns. The substance of the covenant, however, is limited to the covenantor, and purports to restrict his action only. While the capacity in which he assumes to contract is in behalf of himself and others, the actual contract, or the thing agreed not to be done, is limited to his own acts. Clearly the inconsistency cannot be dispelled by subordinating substance to form, or by holding that the actual agreement is of less importance than the capacity in which it was made."

This is the language of the court of errors of New York in construing a covenant contained in the very deed of the land. *Clark* v. *Devoe*, 124 N. Y. 120, 124, 125 (26

N. E. 275, 27 Am. St. Rep. 652). The reasoning of the court in that case is sound, is applicable here, and the case is authority for holding that the agreement of October, 1904, does not create an easement, and that lot 49 is subject only to the general restriction stated in *Tillotson* v. *Gregory.*

MCALVAY, J., concurred with OSTRANDER, J. BIRD, J., did not sit.