HOWARD E. REICHARD et al., Appellants, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY et al., Appellees.

No. 45648.

564

January 13, 1942.

Rehearing Denied May 8, 1942.

N. D. Shinn and H. E. de Reus, for appellants.

Johnson & Johnson and Clark, Pryor, Hale & Plock, for appellee C., B. & Q. Railroad Co.

Johnson & Johnson, for appellee C., R. I. & P. Railway Co.

Johnson & Johnson, for appellee The Pure Oil Company.

Carl Hendrickson, for appellee Cities Service Oil Co.

Leon N. Miller, for appellees Walter Clark and Glenn Beebout.

Paul J. Parker, for appellee Phillips Petroleum Co.

Pike, Sias & Butler, for appellee Mid-Continent Petroleum Co.

Carr, Cox, Evans & Riley, for appellee Sinclair Refining Co.

BLISS, C. J.—Since this matter came before the lower court upon a motion of defendants to dismiss the petition, which motion was sustained and judgment for costs was entered against the plaintiffs, for the purpose of this appeal all well-pleaded material allegations of fact are to be taken as true. Any argument on propositions based on factual matters not alleged has not been considered.

The rights of all parties are founded upon a warranty deed duly executed on May 10, 1876, by E. Baker and wife, S. R. Baker, for a recited consideration of one dollar, delivered to the grantee therein, the Chicago, Rock Island & Pacific Railroad Company, and conveying to the latter, land in Marion County, Iowa, described as follows:

"A strip of land two hundred feet wide off of the South side of the Northeast Quarter of the South East Quarter of

Section one in Township Seventy five North of Range Twenty West of the 5th P. M. for Depot Grounds.

"Provided that in case the said Railroad Company do not construct their Road through said tract or shall, after construction, permanently abandon the Route through said tract of land, the same shall revert to and become the property of the grantors their heirs or assigns."

After receiving the deed, the grantee constructed and operated a depot and a railroad on the ground conveyed, with the western terminus of said railroad route on about the west line of the Northwest Quarter of the Southeast Quarter of said Section one, in Knoxville, Iowa, and the route extending easterly through the land conveyed and on to Evans, Iowa, a town in Mahaska County, about 20.4 miles distant. The grantee continued to operate a railroad on said route, and about June 2, 1880, it was consolidated with and into and became a part of the Chicago, Rock Island & Pacific Railway Company, a defendant herein, which company continued to operate said railroad route until about April 6, 1938. It will be noted, that the grantee was named "Railroad Company" while the company into which it was merged is named "Railway Company."

E. Baker, the grantor in the deed, prior to 1896, died intestate in Marion County, Iowa, survived by his widow, S. R. Baker, and his only child, Frank D. Baker. The widow, S. R. Baker, died in 1896, intestate and unmarried, leaving her son, Frank D. Baker as her only heir. The latter died intestate in Polk County, Iowa, in 1929, childless, but survived by his widow, Millie Baker. No administration was had upon his estate, but its value was much less than $7,500. All the matters of lineage and descent noted above were set out in an affidavit, describing the land in controversy, filed and recorded by one of the appellants in the Recorder's office in Marion County, Iowa.

On October 13, 1938, Millie Baker, unmarried, conveyed the said strip of land by quitclaim deed to Marlene Butcher, who, with her husband, on October 17th following, conveyed the land by quitclaim deed to the appellants. Both deeds were recorded. The petition also alleges: "That on or about the 6th

day of April, 1938, the defendant, Chicago, Rock Island & Pacific Railway Company, then in possession of said tract of land, did permanently abandon said route through said tract of land, and the depot constructed thereon.'' It further alleged that after April 6, 1938, said Railway Company ceased to have any right, title or interest in and to said land, and that whatever rights, titles or interests the other defendants claim, they have been derived solely through said Railway Company, and because thereof they have no right, title or interest and are wrongfully in possession of said land. Plaintiffs pray for general relief and that they be decreed owners in fee simple of said land, and entitled to complete and immediate possession, and that defendants be decreed without right therein.

The motion to dismiss filed by the Chicago, B. & Q. Railroad Company, and joined in by the other defendants, contains the following grounds: (1) The petition shows that the Chicago, R. I. & P. Rail*road* Co. has not operated a railroad over the railroad line since June 2, 1880, and, therefore, any claim of the plaintiffs is barred by the statute of limitations; (2) the petition shows that plaintiffs are grantees of Millie Baker, who is neither an heir, nor an assignee of the grantors in the deed; (3) the petition shows on its face that the reservation in the deed creates a future estate which is not alienable and which is cut off forever by any attempt to alienate the same, and that, therefore, all interest of Millie Baker and her grantees, the plaintiffs, in said real estate was forever cut off by the attempt of Millie Baker to alienate it; (4) the petition shows that the defendants are all assignees of the Chicago, R. I. & P. Railway Company, and that, therefore, if the reserved right in the deed be construed as including assignees of the grantee, then there has been no abandonment, but if assignees are not included, then any claim of plaintiffs has been barred by adverse possession and the statute of limitations.

In sustaining the motion, the trial court apparently based its holding upon grounds (2) and (3) thereof, in that it held that there had been no compliance with Code sections 12018 to 12023, inclusive, with respect to the estate of Frank D. Baker, and, for that reason, though he died without issue, leav-

ing a widow and an estate of less than $7,500, his widow did not receive by descent the property which she was entitled to receive under Code section 12017, and that while she could have saved her rights and property, under section 12017, by a suit in equity after the five years for administration had passed, she could not accomplish this by the recording of an affidavit setting out the facts entitling her to the estate under section 12017. The trial court also concluded that the proviso in the deed was a "condition subsequent," which according to the trial court "amounts to finding that, under the petition, a breach of such condition has and did occur; that no forfeiture of the rights of the grantees in said deed was attempted or made; that, as the court understands the law, the right of forfeiture cannot be transferred, which was done in this case under the petition, if any such right of forfeiture existed at any time in Millie Baker."

I. It is our assumption that since the court in its ruling made no mention of ground (1) of the motion and the latter part of ground (4), alleging the defenses of adverse possession and the statute of limitation, that he found no merit in them. We think these grounds are not good, and that there was no breach of the condition in the deed by a mere change in the name of the operating company, or in any merger or consolidation of the grantee with another company. The fact remains that the depot and railroad were constructed and maintained by a company in which the grantee became a part, until both the route and the depot were permanently abandoned on April 6, 1938. It was the continued existence of both of these matters which the grantors contracted for and which were the real consideration for the conveyance. The condition was not broken until both were permanently abandoned on April 6, 1938.

II. The questions for determination are all questions of law. One of these questions upon which the court and counsel say they spent many weeks of investigation, and which, as one of them states, would require an extensive treatise to properly present, is the kind and character of both the estate, which the grantors conveyed to the railroad company, and, the estate or interest which they retained. Both sides concede that the estate conveyed was a fee-simple, subject to defeasance. They

differ as to the particular kind of a defeasible fee-simple estate that it was. The appellants contend that the estate conveyed was a "determinable fee," otherwise called a "base," "qualified," or "limited" fee, while the appellees claim that it was a fee-simple on a "condition subsequent." The various qualifying terms designating the first-mentioned fee have been used promiscuously as descriptive of an estate in fee with a qualification or limitation annexed to it providing that it must determine whenever that qualification is at an end. This is the definition upon which all authorities, both ancient and modern, are in accord. Littleton, section 254; Coke, Litt. 27a, 220; 2 Blackstone Comm. 109; Cruise, Dig. Title 1, section 82; 1 Bouvier's Law Dict., Rawle's Revision, page 472; Lyford v. Laconia, 75 N. H. 220, 72 A. 1085, 22 L. R. A., N. S., 1062, 139 Am. St. Rep. 680; U. S. Pipe Line Co. v. Delaware, L. & W. R. Co., 62 N. J. Law 254, 41 A. 759, 42 L. R. A. 572; 1 Washburn, Real Property (6th Ed.), pages 79, 80. The author in 26 C. J. S. (Deeds), section 110, page 400, thus defines it:

"A base fee, a fee simple determinable, or a fee simple subject to a conditional limitation, a fee with a limitation annexed that upon the happening of some future event or contingency, the estate will automatically terminate and pass by way of possibility of reverter to the grantor, or, in case of a limitation over to the person to whom it is limited, may be created by deed."

In 19 Am. Jur. (Estates), section 28, page 487, is this language:

"In his historic work on Estates, Preston remarked: 'Though the estate will determine when the event marked as the boundary to the time of continuance shall happen, in the meantime the whole estate is in the grantee or owner, subject only to a possibility of reverter in the grantor. The grantee has an estate which may continue forever, though there is a contingency which, when it happens, will determine the estate. This contingency cannot, with propriety, be called a "condition"; it is part of the limitation, and the estate may be termed

a "fee." Plowden uses the phrase "fee simple determinable." ' "

Both C. J. S. and Am. Jur. cite many cases in support of their texts. Des Moines City Ry. Co. v. Des Moines, 183 Iowa 1261, 1265, 159 N. W. 450, 452, L. R. A. 1918D, 839, involved deeds of land by abutting owners to aid in the construction of a street railway thereon. In the deeds there was a "provision that, in the event of the abandonment of the use of the 20-foot strip for street railway purposes, 'it shall revert to the grantors.' " The court, speaking through Justice Weaver, said, page 1267 of 183 Iowa, page 453 of 159 N. W.:

"A condition in a deed by which the property is to revert to the grantor, upon an event which may or may never occur, gives rise to what the books call the 'possibility of reverter,' and serves, in some degree, to qualify the fee created by the conveyance. But it remains true that an estate so conveyed is, nevertheless, a fee; and the grantee thereof is the owner, so long as the estate continues, *and until the reverter takes place.* [Italics ours.] 4 Kent's Commentaries 10; State v. Brown, 27 N. J. L. 13; Whiting v. Whiting, 4 Conn. 179; Tiedeman on Real Property, Sec. 271. Speaking of the passing of title to land, subject to a possibility of reverter in the grantor, the Massachusetts court has said:

" 'Until the happening of the contingency, or a breach of the condition by which the precedent estate is determined, it retains all the characteristics and qualities of an estate in fee. Although defeasible, it is still an estate in fee. The prior estate may continue forever, it being an estate of inheritance, and liable only to determine on an event which may never happen.' Brattle Square Church v. Grant, 3 Gray (Mass.) 142, 150. * * * [Page 1268.]

"An estate which may last forever is a fee. If it may end on the happening of a merely possible event, *it is a determinable, or qualified, fee.* [Italics ours.] First Universalist Society v. Boland, 155 Mass. 237."

While the point at issue in the street railway case was whether the grantee received a fee simple, the court cites other

cases as examples of determinable fees. Among them, Attorney General ex rel. Askew v. Smith, 109 Wis. 532, 85 N. W. 512; Polebitzke v. John Week Lbr. Co., 157 Wis. 377, 147 N. W. 703, Ann. Cas. 1916B, 604; and State v. Brown, 27 N. J. L. 13. In the last-cited case, the conveyance was limited by the words "so long as used for a canal."

We come now to the contention of the appellees that the estate of the grantee in the deed was a fee simple on a "condition subsequent," or a fee, subject to divestiture on the breach of, or failure to perform the condition prescribed in the instrument of conveyance. One must do much hair splitting to find any difference or distinction in the defeasible events which have been held, in the hundreds of cases where the question has arisen, to have terminated determinable fees, and fees upon condition subsequent. The difference between the two estates lies in the fact that if it is a determinable fee, the happening of the limiting event prescribed, automatically and ipso facto, terminates the fee, and it reverts to the grantor or his successors in interest without any act or move on the part of any of them. While if it is a fee upon condition, the happening of the event or the breach of the condition merely gives the grantor or his successors in interest the power to take action, or the right of re-entry, to terminate the fee, which power or right must be affirmatively exercised.

The determination of which estate was created might depend upon the particular word used to introduce the limiting proviso. If the introducing words were "so long as," "while," "until," or "during," the fee was usually held to be determinable, but if the words used were "upon condition," or "provided," the fee was usually said to be on condition. In other words, if the deed stated "so long as used for a railway," it was a determinable fee reverting automatically to the grantor when the use was abandoned, but if it stated "provided it was used for a railway," the fee was upon a condition subsequent requiring re-entry of the land or some act upon the part of the grantor to terminate the fee. 26 C. J. S. (Deeds), section 110, page 400. There are some historical matters, stated by way of obiter, in Boone Biblical College v. Forrest, 223 Iowa 1260, 275

N. W. 132, 116 A. L. R. 67, to that effect. Little importance is now attached to the use of particular or formal words in the creation of these estates. 1 Bouvier, Law Dict. 314 (8). Such arbitrary distinctions smack too much of the over-refined technicalities of early English real property law. To give importance to it is to "pay tithe of mint and anise and cummin, and omit the weightier matters of the law." In construing a deed of this kind, or any like instrument, the intent of the parties is to be ascertained. The language is simple and its meaning clear. It expressly provided that the land was conveyed for depot grounds and for a railroad route through it, and that upon the permanent abandonment of such use, the land was to revert to the grantors, their heirs, or assigns. The meaning of the word "revert," both by derivation and everyday use is clear. It means to turn back, to return to. With respect to its use in the statute providing for the reversion of a railroad right of way, the court, in Remey v. Iowa Cent. Ry. Co., 116 Iowa 133, 137, 89 N. W. 218, 220, said:

"If the period of non-user or failure to resume work has extended to eight years, the right of way reverts to the 'owner of the land from which said right of way was taken.' 'Revert,' as here used is a technical word, and is to be accorded a meaning as such. * * * It is the return to the owner of the fee of the easement formerly appropriated, or, perhaps, more accurately speaking, the removal of the burden cast upon the fee. *The instant the right of way reverts to the owner, the easement, with all its incidents, is extinguished and the owner of the tract from which taken restored to complete dominion over the entire property. * * * No condition is attached to the reversion * * *. After reversion, there remains no right of way, abandoned or otherwise.*" (Italics ours.)

There is nothing in the above-mentioned statute (section 2015, Code of 1897) which conditions the reversion upon any act of re-entry on the part of the grantor, and no such act is required. Likewise in the deed before us, reversion is not conditioned upon any affirmative action upon the grantors or those holding under them. In the case before us, the consideration of one dollar indicates that the land was in effect a gift to the

grantee, provided the depot and route were established. If they were not established and maintained, it must be reasonably inferred that the original status would be restored at once, with the least inconvenience to each. That, certainly, would be the wish and intention of the grantors, and the grantee would have no wish to place any obstacle in the way, or to unnecessarily discommode the grantors, since it then would have no use for the strip of land conveyed.

The matter of defeasible fees has come before this court a number of times. In all of them, the fee was treated as "base," "qualified," or "determinable." In no case was it held that a re-entry or an affirmative act upon the grantor or those holding under him was necessary to effect a reversion of the fee. In Gill v. Chicago & N. W. Ry. Co., 117 Iowa 278, 90 N. W. 606, the plaintiff originally conveyed the right of way " 'for all uses and purposes connected with the construction and use of a railroad. * * * provided, however, * * * that if the said * * * R. Co., or its assigns, shall at any time hereafter cease permanently to use said road so to be constructed, and the same shall be abandoned, or the route thereof changed so as not to be continued over said premises, then and in that case said land thereby granted shall revert to the said grantors.' " After referring to the fact that it was a "condition" of the deed that upon abandonment of the railroad, "the land granted for the right of way shall revert," the court said (page 280): "This was a condition which she had the right to impose on the defendants, and, *if they have failed to observe it, the grant is void.*" (Italics ours.) In other words, abandonment of the road, in itself, voided the deed, without any re-entry or action by the grantor.

In Phelps Mortgage Co. v. Thomas, 194 Iowa 1078, 1080, 190 N. W. 399, 400, the testator devised real property to his wife in fee simple, " 'just so long as she remains my widow.' " The court said (page 1082 of 194 Iowa, page 401 of 190 N. W.):

"We think there is no escape from the conclusion that the testator by this will created *a base or determinable fee* in his surviving widow, subject only to the *condition* against remarriage, * * *." (Italics ours.)

In Vaughn v. Converse, 184 Iowa 891, 892, 893, 169 N. W. 144, the testator devised an estate to his wife, which was held to be a fee, to hold and control " 'so long as she remains my widow.' " The court states that "the will burdened the wife's fee *with a condition, breach of which would defeat the title.*" (Italics ours.) The court speaks of it as a "condition," and not as a "qualification" or a "limitation" of the fee, but nevertheless states that its breach would defeat the title, and not that it would give the right or power to defeat it by some affirmative action.

In Staack v. Detterding, 182 Iowa 582, 587, 161 N. W. 44, L. R. A. 1918C, 856, the testator devised his wife his real estate " 'in fee simple, so long as she will be my widow, and not marry again.' " The court held this to devise a defeasible fee—a fee subject to being divested only by the marriage of the widow. The court after defining a determinable fee as defined herein, stated that the devise passed a qualified or base or determinable fee, which terms "are now used indiscriminately."

In re Estate of Clifton, 207 Iowa 71, 81, 218 N. W. 926, 931, the testator created a trust, providing that if his son, Clarence, the beneficiary, died without heirs of his body, the corpus of the trust should pass to another designated beneficiary. This court held that "The fee given to Clarence was limited, conditional, determinable,—a base or qualified fee (ownership)."

In Guilford v. Gardner, 180 Iowa 1210, 162 N. W. 261, the devise was technically a conditional limitation. The title in the son was to become absolute only if he died leaving living issue. The court speaks of the estate as being a conditional or defeasible fee. See also Frazier v. Wood, 219 Iowa 36, 43, 255 N. W. 647.

It is our judgment that, under all of the decisions of this court, the estate conveyed by the Baker deed was a determinable fee, reverting automatically and at once upon the happening of the event stated in the deed. Although this court has quite indiscriminately used the terms "limited," "base," "qualified," "conditional," and "determinable" in designating such a fee, it has never held that a reversion must be consummated by some affirmative action by the grantor or his successors in interest.

■ III. But if, as a matter of argument only, we concede that the fee of the grantee was on a condition subsequent, such concession will avail the appellees not at all. All they claim for such an estate is that those claiming under the grantors should have re-entered the land, or in some affirmative action exercised their right of forfeiture, in order to effect a reversion. Under early English law, land was not conveyed by deed or other paper instruments, but by livery of seisin—by the parties going upon the land and the grantor making a symbolic delivery with a handful of earth or a sprig of a tree. Likewise, a corresponding ceremony of re-entry was necessary to effect a disseisin. As Coke put it, "An estate of freehold cannot begin nor end without ceremony." Moore v. Sharpe, 91 Ark. 407, 121 S. W. 341, 23 L. R. A., N. S., 937. But under present day authorities, neither re-entry, demand of possession, nor notice of forfeiture is an essential step in an action to establish the reversioner's right to the property. Volume 19, Am. Jur. (Estates), section 88, pages 550, 551, states the law on the matter thus:

"Many cases hold that a demand of possession is all that is necessary before bringing an action upon the breach of a condition subsequent, demand being equivalent to a re-entry and sufficient to work a forfeiture of the estate.

"As far as the quality of acts necessary to consummate a forfeiture for breach of condition subsequent is concerned, the weight of authority is contrary to the early doctrine and such decisions as still follow that doctrine. The prevalent modern view is that the grantee's estate may be terminated by the grantor without any re-entry, demand, or notice of forfeiture. Such authorities take the position that the acts essential to consummate the forfeiture may be direct in nature, and need not be ceremonious. If after breach it is sought to regain possession, the grantor may maintain an action therefor without any re-entry, demand of possession, or notice of forfeiture, since the commencement of an action is deemed equivalent thereto. Likewise, a formal entry upon the land is not a necessary prerequisite to the bringing of an action to quiet title after breach of a condition subsequent."

It is our judgment, that the recording of the affidavit, the giving and the recording of the conveyances placing title in the appellants, and the institution of this equitable action to quiet title and for possession of the property, are affirmative acts sufficient to comply with any demands of the law respecting re-entry.

The authorities outside of Iowa, cited by appellees, are of little aid as precedents. We will not analyze the two cases cited by them from Iowa—Bonniwell v. Madison, 107 Iowa 85, 77 N. W. 530, and Strothers v. Woodcox, 142 Iowa 648, 121 N. W. 51, but neither of them have application.

IV. The trial court and the appellees have discussed some-what that at common law a mere expectant interest in land, or a possibility of reverter, could not be assigned, transferred, or conveyed, and any such a conveyance was a nullity, and also any attempt to transfer a possibility of reverter in a fee with a con-dition subsequent annexed, destroyed the reversion. It seems rather fantastic to us, that a conveyance which is ineffective to convey what it attempts to convey is nevertheless an effective means of destroying it. We need not pass upon this matter be-cause there was never any attempt to convey the possibility of reverter under the Baker deed. When Millie Baker conveyed the property to the grantor of the appellants, the possibility of reverter had already been transformed into a fee simple, di-vested of all limitations and conditions, by the abandonment of the depot and railroad route through the land, on April 6, 1938. The thought is thus expressed in Bouvier v. Baltimore & N. Y. R. Co., 67 N. J. Law 281, 288, 51 A. 781, 784, 60 L. R. A. 750, 765:

"A distinction not always clearly made should, however, be borne in mind. Before breach, as in case of any determinable fee, there is in the grantor only a possibility of reverter. 4 Kent Com. 11n; Nicoll v. New York & Erie Railroad Co., 12 N. Y. 121. After breach there is a vested right."

V. Under the decisions of this court, an assignment or conveyance of an executory interest, or a naked possibility of a property right, or an expectancy of heirship or testamentary

gift, is valid, if fairly made and free from any unconscionable advantage, and is enforcible when it has ripened. Jones v. Jones, 46 Iowa 466; Wolf v. Wolf, 152 Iowa 121, 131, 131 N. W. 882; Betts v. Harding, 133 Iowa 7, 109 N. W. 1074; Gannon v. Graham, 211 Iowa 516, 231 N. W. 675, 73 A. L. R. 1050; Edler v. Frazier, 174 Iowa 46, 59, 156 N. W. 182; Mally v. Mally, 121 Iowa 169, 171, 96 N. W. 735; Lee v. Lee, 207 Iowa 882, 885, 223 N. W. 888; Thornton v. Mulquinne, 12 Iowa 549, 79 Am. Dec. 548; Richey v. Rowland, 130 Iowa 523, 524, 525, 107 N. W. 423; Aultman Engine & Thresher Co. v. Greenlee, 134 Iowa 368, 371, 111 N. W. 1007; Richey v. Richey, 189 Iowa 1300, 1303, 179 N. W. 830; Andrew v. Bankers Life Co., 214 Iowa 573, 576, 240 N. W. 215.

Not only was the possibility of reverter, which was owned and held by the grantors in the deed and their successors in interest from the delivery of the deed in 1876 to the abandonment of the depot on the land and the route through it on April 6, 1938, alienable, but it was inheritable, descendible and distributable under the Iowa statutes of descent and distribution.

"All property, in the broadest sense of the term, is descendible and distributable. It has been held that what will pass to an assignee or vendee will be cast upon the heir by descent. On the other hand, inheritability has been held to be broader than alienability, at least in some respects, as, for example, with respect to a possibility of reverter." 16 Am. Jur. (Descent & Distribution), section 23, page 791; Copenhaver v. Pendleton, 155 Va. 463, 155 S. E. 802, 77 A. L. R. 324; North v. Graham, 235 Ill. 178, 85 N. E. 267, 18 L. R. A., N. S., 624, 126 Am. St. Rep. 189; Anderson v. Clune, 269 U. S. 140, 46 S. Ct. 69, 70 L. Ed. 200.

Whether the estate conveyed under this deed was a determinable fee, or a fee on condition subsequent, the possibility of reverter was inheritable and distributable under the Iowa statutes of descent. "The possibility of reverter which remains in the grantor on the conveyance of a qualified or determinable fee to real estate [North v. Graham, supra; Clapp v. Wilder, 176 Mass. 332, 57 N. E. 692, 50 L. R. A. 120; Copenhaver v. Pendleton, supra; Fayette County Board v. Bryan, 263 Ky.

61, 91 S. W. 2d 990; Brill v. Lynn, 207 Ky. 757, 270 S. W. 20, 38 A. L. R. 1109; Annotation, 77 A. L. R. 344] or which remains in the creator of an estate in fee simple conditional in those jurisdictions where such estate is recognized [Sagers v. Sagers, 158 Iowa 729, 138 N. W. 911, 43 L. R. A., N. S., 562] is stated generally in the authorities to pass to the heirs of the grantor or creator." 16 Am. Jur. (Descent & Distribution), section 28, page 795. Likewise, the right of entry under a condition subsequent passes to the heirs. 16 Am. Jur. (Descent & Distribution), section 28, page 796, section 44, pages 812, 813.

The possibility of reverter, or the right of re-entry, whichever it was, that rested in the grantors, passed to their son, Frank D. Baker, on their deaths.

█ VI. It was the theory of the trial court that when Frank D. Baker died intestate and without issue, his widow took nothing under Code section 12017, because there was no administration upon her husband's estate, and no compliance with Code sections 12018 et seq., and no suit brought in equity to determine the rights of the widow. This is one of the main grounds of the trial court's decision.

We are disposed to disagree with the very able court below. In no place in the statutes of Iowa is it said that administration of a decedent's estate is necessary to determine either the title or the devolution of either the real or personal property of which the decedent died seized, among the widow and those entitled to it under the statutes of descent and distribution. And this court has never so held. The statutory procedure respecting administration of estates is not as full and definite as it might be made, although it has worked very well. It has been said by a distinguished writer on the subject (Woerner on American Law of Administration, section 201) that the rights of creditors to the assets of a deceased person is the principal reason for requiring official administration, and that if there is only personal property and no debts, the courts will sanction the disposition of the assets without administration. Baldridge v. Evans, 181 Iowa 204, 209, 164 N. W. 333. We have said this many times. One of our later cases being Heinz v. Vawter, 221 Iowa 714, 716, 266 N. W. 486, 487, where we stated:

"Where there are no debts and the property of an estate is such that it can be divided and the persons entitled thereto agree upon a division thereof, there is nothing either in law or reason to prevent them from settling and distributing the estate without the appointment of an administrator. Phinny v. Warren, 52 Iowa 332, 1 N. W. 522, 3 N. W. 157; Murphy v. Murphy, 80 Iowa 740, 45 N. W. 914; Christe v. Chicago, etc. R. Co., 104 Iowa 707, 74 N. W. 697; Weaver's Estate v. State, 110 Iowa 328, 81 N. W. 603; Douglas v. Albrecht, 130 Iowa 132, 106 N. W. 354; In re Acken's Estate, 144 Iowa 519, 123 N. W. 187, Ann. Cas. 1912A, 1116."

See also Baurer v. Myers, 224 Iowa 854, 858, 278 N. W. 302; Prichard v. Mulhall, 140 Iowa 1, 7, 118 N. W. 43; Haynes v. Harris, 33 Iowa 516, 520; Jordan v. Hunnell, 96 Iowa 334, 337, 338, 65 N. W. 302; Hoffman v. Hoffman, 205 Iowa 1194, 1198, 219 N. W. 311.

The ownership of both real and personal intestate property is fixed by the statutes of descent. Neither the administration of the estate, nor the distribution of the property thereunder, adds or creates any title or gives any new title. It merely ascertains the property and the particular person among the distributees to whom it belongs. Moore v. Gordon, 24 Iowa 158, 161; Blackman v. Baxter, Reed & Co., 125 Iowa 118, 120, 121, 100 N. W. 75, 70 L. R. A. 250, 2 Ann. Cas. 707; Christe v. Chicago, R. I. & P. R. Co., 104 Iowa 707, 709 et seq., 74 N. W. 697; State v. Potter, 195 Iowa 163, 165, 191 N. W. 855.

VII. This court has uniformly held that all estate property vests at once upon the owner's death. In re Cooper, 229 Iowa 921, 925, 295 N. W. 448. And this is true whether the property be real or personal. It vests instanter in those entitled to it under the statutes of descent, upon the death of the intestate, and not from the time of distribution. Moore v. Gordon, 24 Iowa 158, 161; Laverty v. Woodward, 16 Iowa 1, 5; In re Wiltsey's Estate, 122 Iowa 423, 428, 98 N. W. 294; Bowen v. Evans, 70 Iowa 368, 30 N. W. 638; Christe v. Ry. Co., supra; Ferry v. Campbell, 110 Iowa 290, 296, 81 N. W. 604, 50 L. R. A. 92; Toerring v. Lamp, 77 Iowa 488, 489, 42 N. W. 378; Weaver's Estate v. State, 110 Iowa 328, 332, 81 N. W. 603;

Prichard v. Mulhall, supra, 140 Iowa 1, 8; Herriott v. Potter, 115 Iowa 648, 650, 89 N. W. 91; Douglas v. Albrecht, 130 Iowa 132, 135, 136, 106 N. W. 354. Of course, the property may be taken to pay the debts of the decedent and the obligations of the estate, and it may, under some circumstances, be necessary for the administrator to look after the real estate for a time, but in either case he takes and holds it merely as trustee for all those rightfully interested in it. In re Estate of Willenbrock, 228 Iowa 234, 239, 240, 290 N. W. 502.

The property right which Millie Baker had in the possibility of reverter or the right of re-entry owned by her husband could not be destroyed because of lack of administration of his estate. As said in Phinny v. Warren, supra, 52 Iowa 332, 334:

"But if no administrator is appointed it will not do to say that the note ceased to be property. Property cannot be thus blotted out. There is no statute which requires that letters of administration should be taken out, or that imposes a penalty for not doing so."

Millie Baker held title to this item of property under Code section 12017, and not under the directory proceedings of section 12018 et seq., and the failure to use the procedure designated by those sections did not destroy that property or defeat her title to it. The case of Moore v. Gordon, supra, 24 Iowa 158, 161, 162, had to do with a somewhat similar situation. There the widow's distributive or dower interest was never ascertained or set off to her. She later died. It was held that this interest or share in the estate passed to her instanter upon the death of her husband. The court said:

"Is this right vested and perfect only when distribution is actually made, or is it vested and perfect at, and from the time of, the death of the intestate? That the right is not contingent upon actual distribution to the widow, seems to be left in no doubt whatever by the statute. It would not be claimed that the right of one of the heirs would be defeated if he should die before distribution, or an order for distribution. And, under the statute provisions above referred to, we see no more reason for holding that the widow's distributive share will lapse (so

to speak), if she dies before distribution, than for holding that the right of a child, or any of the next of kin, would be defeated by the same circumstance.

"The widow's right is conferred by the same section which confers the right upon the child or heir. Her title equally with that of the child or next of kin is absolute.

"Why should death before distribution defeat the right or the vesting of the share in the one case and not in the other?
\* \* \*

"Respecting these statutes, the cases and authorities below cited justify us in laying down these general principles, viz.: That the right to a distributive share vests in the person entitled, whether widow or next of kin, instanter upon the death of the intestate, and not from time of distribution actually made; that distribution gives to the distributee no new title, but only ascertains the property to which the title attaches; that, if the death of the distributee takes place before distribution actually made, his share goes to his legal representatives or legatee, and that the right of the widow to her distributive share is held by a title as high as that of the heir or next of kin, and, like his, is not personal, but transmissible."

For a like decision, see Potter v. Worley, 57 Iowa 66, 68, 69, 7 N. W. 685. See Betts v. Harding, 133 Iowa 7, 8, 109 N. W. 1074, where an unassigned distributive share, including the homestead, was transferred and the conveyance upheld. See also In re Wiltsey's Estate, supra, 122 Iowa 423, 428; Blair v. Wilson, 57 Iowa 177, 178, 10 N. W. 327; In re Estate of Proctor, 103 Iowa 232, 239, 72 N. W. 516; Swartz v. Andrews, 137 Iowa 261, 266, 114 N. W. 888, 126 Am. St. Rep. 285.

As the trial court said, the rights of Millie Baker to this property could have been determined by a court of chancery. Baldridge v. Evans, 181 Iowa 204, 209, 164 N. W. 333. But failure to do so did not defeat either the rights of herself or those of the appellants. We have held that chain of title may be shown by such an affidavit as was recorded by the appellants. Prichard v. Mulhall, supra, 140 Iowa 1, 7. The affidavit does not show that Frank D. Baker left any unpaid debts. How-

ever, we cannot assume that there were any that were not paid, and the fact that he died in 1929 renders the matter of unpaid debts rather unimportant.

VIII. The appellees do not urge the point, discussed in divisions VI and VII of this opinion, and stressed by the trial court. They insist that the appellants have no basis for their claim because Millie Baker was not an heir or an assign of the grantors. Whatever interest she took obviously came not direct from these grantors, but through their son and only heir. He inherited the possibility of reverter, or right of re-entry, from the grantors. It was his property when he died, at which time it passed to Millie Baker as a part of her distributive share. It is not reasonable to suppose that the grantors intended that this expectant or possible interest was to be limited to themselves and to those who might take from them by direct inheritance or assignment. A railroad right of way is uniformly contemplated as something of permanence and very likely to continue for a considerable period in the future. As evidence of this, it may be noted in the condemnation of a right of way the full value of the land taken is usually allowed as damages. The probability of an early reversion is seldom contemplated. It is fair to say that the grantors considered that such a reversion might probably be postponed until long after their deaths, and that their heirs might pass it on either by assignment or conveyance, or under the statutes of descent and distribution. It is a legitimate inference that they did not intend that their heir could not pass this property interest or the reverted fee to his surviving widow. If Frank D. Baker could have lawfully assigned this interest to a stranger, and we are satisfied that he could have done so, we know of no sound reason why he could not permit it to pass to his widow under the statutes of descent and distribution. The important matter to keep in mind is that she was entitled to receive and did receive this property under Code section 12017, which had been reserved by the deed and forfeited by the grantee. In support of their proposition, the appellees cite Schultz v. Schultz, 183 Iowa 920, 167 N. W. 674; Murphy v. Murphy, 190 Iowa 874, 179 N. W. 530; In re Estate of Noble, 194 Iowa 733, 190 N. W. 511,

26 A. L. R. 86. These cases merely hold that the surviving spouse of a spouse who predeceased his or her parent takes nothing from the estate of the latter through the deceased spouse. As it is commonly put, a wife or husband is not the heir of the other. It may be conceded that under our decisions a spouse does not take the distributive share as an heir of the deceased spouse. But this is not saying that Millie Baker was not entitled to and did not receive the property which the grantors reserved. She was the successor in interest of her husband who inherited direct from the grantors.

IX. The deed also uses the word "assigns." It is a term of well-known meaning. We may assume that the parties knew that meaning. It does not mean just a single person, but also comprehends a line or succession of persons. It is often written "assignees." An "assignment" has been defined as "a transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein." (Bouvier Law Dict.) A frequently quoted definition of the word "assigns" is that stated in Baily v. DeCrespigny, 4 Court of Queens Bench, Law Reports, 178, 185, where the court said:

"The word 'assigns' is a term of well-known signification, *comprehending all those who take immediately or remotely from or under the assignor, whether by conveyance, devise, descent, or act of law*; Spencer's Case, 5 Rep. 16. The defendant when he contracted used the general word 'assigns,' knowing that it had a definite meaning, and he was able to foresee and guard against the liabilities which might arise from his contract so interpreted." (Italics ours.)

The word has been held to mean "heirs," "devisees," "executors," "administrators," "legal representatives," "remaindermen." Its meaning has never been confined only to those who receive by contract. Frank D. Baker was both an "heir" and an "assign" of the grantors. If he had devised this property to his wife, she would have been an "assign" not only of himself but of his parents. Likewise, if he had sold or given it to her. And, since he permitted her to take it by

operation of law, under the statutes of descent and distribution, she must also be said to have been an assign of both him and his parents. There is privity in estate between the appellants and the grantors in the deed. They are their assigns and, in accord with the familiar principle of law, stand in the shoes of their assignors.

Numerous authorities support all of the matters stated in this division. See Smith v. Baxter, 62 N. J. Eq. 209, 49 A. 1130; Glenn v. Caldwell, 74 Miss. 49, 52, 20 So. 152; Brown v. Crookston Agricultural Assn., 34 Minn. 545, 547, 26 N. W. 907; Erichsen v. Tapert, 172 Mich. 457, 138 N. W. 330; Jacobs Law Dict.; Decker v. New York Cent. & Hudson R. R. Co., 57 Pa. Super. Ct. 432, 444; Ogden v. Price, 9 N. J. 167, 169; 3 Am. & Eng. Encyc. (2d Ed.) 156; 5 C. J. 1310, note 5; 6 C. J. S. 1035; Paschke v. Adams Lumber Co., 169 Minn. 445, 211 N. W. 827; Williams v. Johnson, 175 Miss. 419, 167 So. 639, 642; Ferrell v. Deverick, 85 W. Va. 1, 100 S. E. 850, 853; Whittier v. Riley, 104 Neb. 805, 178 N. W. 762, Ann. Cas. 1913B, 734 et seq.; Hoffeld v. United States, 186 U. S. 273, 22 S. Ct. 927, 46 L. Ed. 1160, 37 Ct. Cl. 558; 4 Words & Phrases (Perm. Ed.) 538 et seq.; Duke of Cumberland v. Graves, 7 N. Y. (3 Seld.) 305, 312; Hamilton v. Kingsbury, 2d Cir., 15 Blatchford 64, 69; Smith v. Rice, 183 Mass. 251, 66 N. E. 806; Greenaway v. Hart, 14 C. B. 340.

With respect to the defendants other than the Chicago, Rock Island & Pacific Railway Company, it can be said that they have no greater rights than this company, since all of them apparently hold under it. The deed of the grantors was of record when they acquired such rights as they may have, and they took them subject to the limitation or the condition in the deed. The determinable character of the fee followed any transfer. If the instruments by which they hold were executed after April 6, 1938, when the abandonment of the route and the depot occurred, according to the petition, they then took nothing, for their grantor had nothing to convey. Staack v. Detterding, supra, 182 Iowa 582, 587; 19 Am. Jur. (Estates), section 29, page 490; section 30, page 491.

It is our judgment that the trial court was in error in sus-

taining the motion of the appellees to dismiss and entering judgment against the appellants. It is, therefore, ordered that the judgment and decree appealed from is reversed and remanded.—Reversed and remanded.

STIGER, SAGER, OLIVER, GARFIELD, and WENNERSTRUM, JJ., concur.